White *v.* Petty.

HARRIET L. WHITE *vs.* IRA PETTY & OTHERS.

Fairfield. Co., March T., 1889.   PARK, C. J., CARPENTER, PARDEE,
            LOOMIS and BEARDSLEY, Js.

Certain oyster grounds were designated by an oyster-ground committee to
    the plaintiff's assignors in February, 1881, under the statute then in
    force, (Rev. of 1875, p. 214, sec. 3,) but were not staked out or the
    designation recorded until September 29th, 1882.  By the statute a
    party in whose favor such a designation was made was required to
    "mark and stake out such place," and no rights were acquired against
    the public until he had done so.  The Superior Court, under an act
    passed in 1881, (Gen. Statutes, § 2326,) appointed a committee to ascer-
    tain and report all the natural oyster beds in the waters of the town,
    the statute making the report of such a committee, when returned to
    the court and accepted, conclusive upon the matter.  The committee
    returned its report, and it was accepted in March, 1883, but it did not
    appear at what time the committee made its personal investigation of
    the waters of the town, but only that it was appointed at the February
    term of the court in 1882, that it gave public notice that it would begin
    its hearing and investigation on the 8th of May, 1882, and that it com-
    pleted its principal report on January 16th, 1883, and returned it to the
    court in March, 1883.  Held that it was a reasonable presumption that
    the committee made its personal inspection before the 29th of Septem-
    ber, 1882, and at a time when there were no stakes set to indicate that
    the grounds in question had been designated to any one, and that its
    report, not mentioning the grounds in question as natural oyster beds,
    was admissible as evidence that they were not such when the report
    was filed, and as tending to show that they were not so when they were
    designated to the plaintiff's assignors two years before.

· The case of *Application of Clinton Oyster-ground Committee*, 52 Conn., 5,
    commented on.  By the term "designated," as there used, in limiting
    the jurisdiction of such·a committee to grounds not designated to indi-
    viduals before the act of 1881, was meant a designation that was per-
    fected by the staking out of the ground.

The present suit was for an injunction against the removing of stakes and
    the taking of oysters from the grounds.  Before the suit was brought
    an application had been made to the Superior Court by parties other
    than the present defendants, for an order for the removal of the stakes
    and setting aside the designation as void under Gen. Statutes, § 2324,
    which application was still pending.  Held to be no reason for not
    granting the injunction.

[Argued March 19th—decided April 5th, 1889.]

SUIT for an injunction to restrain the defendants from

removing stakes placed to mark oyster grounds belonging
to the plaintiff and from taking oysters and shells from the
grounds; brought to the Court of Common Pleas of Fair-
field County, and heard before *Doten, J.* Facts found and
judgment rendered for the °plaintiff, and appeal by the de-
fendants for errors in the rulings of the court. The case is
sufficiently stated in the opinion.

*J. B. Hurlbutt*, for the appellants.

*L. Warner*, for the appellee.

BEARDSLEY, J.   The complainant alleges that she is the
owner of various oyster lots in the town of Darien, upon
which she has in good faith planted large quantities of oys-
ters, and prays for an injunction restraining the defendants
from entering upon them, removing the stakes and taking
up the oysters.   The defendants deny that the plaintiff has
any title to the ground, alleging that it is, and for more
than ten years past has been, a natural oyster bed.   The
court decided that none of the ground in question was a
natural oyster bed.

The court finds that a part of the ground was, in the
summer of 1883, pursuant to the statute (Rev. Statutes of
1875, p. 214, sec. 3), designated to the plaintiff and to others
who afterwards assigned their rights to her, and the other
part of the ground was designated to the plaintiff's assignors
in the months of February and March, 1881.

The court also finds that the ground so ·designated in
1881 was first inclosed by buoys and stakes on the 29th
day of September, 1882, and that until then the public had
no knowledge of such designation.

Upon the trial the defendants introduced evidence to
prove that all the ground in question was, and for ten years
before had been, a natural oyster bed.   To rebut that evi-
dence the plaintiff offered in evidence the report of a com-
mittee appointed by the Superior Court, pursuant to the act
of 1881, (Session Laws of 1881, p. 104, sec. 12, now Gen.

Statutes, § 2326,) to locate, and describe by proper boundaries all the natural oyster beds in the town of Darien, and to make report, etc. The principal report was dated January 16th, 1883, with a supplemental report dated March 26th, and was recorded March 27th, 1883, and it did not describe any part of the ground in question as a natural oyster bed.

The defendants introduced evidence that in May, 1883, certain other parties brought a petition to the Superior Court under the provisions of the act, (Rev. Statutes of 1875, p. 215, sec. 11,) praying the court to declare the designations of all the land in question void, and to order the removal of the stakes inclosing it, upon the alleged ground that it was a natural oyster bed, which action was still pending.

The defendants claimed that the committee appointed under the act of 1881 had no jurisdiction over ground which had been designated before that act went into effect, and hence that their report, not describing that part of the ground in question which was designated in March and September, 1881, as natural oyster ground, was not evidence that it was not such. And they assign the refusal of the court so to rule as their first specific reason of appeal.

The defendants rely in support of their claim upon the case of *The Application of the Clinton Oyster-ground Committee*, 52 Conn., 5. That case was a remonstrance against the report of a committee appointed under the act of 1881 to designate the natural oyster beds in the town of Clinton. "Several persons" (in the language of the court) "who had oyster grounds set out to them in severalty prior to the passage of the act, and who had acquired valuable interests therein, and whose interests might be seriously affected if the report of the committee should be accepted, appeared and remonstrated against its acceptance." The court rejected the report of the committee, saying "that the act of 1881, notwithstanding its general language, does not apply to oyster ground previously designated."

The case is undoubtedly a decisive authority for the defendants if the word "designated" as there used is to be taken as referring merely to the act of the committee au-

thorized to determine and inform applicants what ground they may occupy." Before the applicant can acquire any right to the exclusive occupation of the ground he must "mark and stake out the place." This he may or may not do after the committee has acted. Until he does it the rights of the public in the ground assigned to him are not affected.

It is apparent from the statement of the case referred to that the remonstrants had perfected rights to the ground in question in that case and that the word "designated" was used to describe such rights. In the present case the ground was designated to the plaintiff or her assigns by the oyster committee some months before the act of 1881 went into effect, but no steps were taken by her to appropriate it to her use until September 29th, 1882, more than a year after the act took effect, and when the committee for making designations would have been justified in presuming that she had abandoned any claim to it if another application for it had been made.

Of course if the committee appointed under the act of 1881 to investigate the waters of the town had made its investigation during this interval and before the stakes were finally set, it would have taken jurisdiction of this ground and passed upon it as upon the rest of the open ground, and its report of all the natural oyster beds of the town, with the omission of the ground in question, would have been a final determination that, at the return of the report in March, 1883, this ground was not a natural oyster bed. And if the report was thus conclusive as to the character of this ground in 1883, it was clearly admissible as evidence tending to show that the ground was not a natural oyster bed when, two years before, it was designated to the plaintiff's assignors. It is a matter of common knowledge that oyster beds are of slow growth, and that if certain ground was not such at a particular date, it would not have been such two years before. This is especially so since such oyster beds grow constantly from less to greater, so that, while it might not be certain that oyster ground that was

not clearly a natural oyster bed to-day would not become such in two years, it would be certain that ground that is not a natural oyster bed to-day was not such two years ago.

The question therefore, whether the report of the committee was admissible as proof that the ground in question as not a natural oyster bed in 1883, must depend mainly upon whether the committee made its investigation before the ground was staked out on the 29th of September, 1882.

Even if the ground had been staked out before the inspection made by the committee, yet as, under the view we have expressed, that oyster grounds designated to individuals before the act of 1881 took effect fell under the jurisdiction of such a committee where not seasonably staked out, it might be regarded as the duty of the committee to ascertain the facts and assume jurisdiction over the ground in question and might be presumed that it did its duty and examined the ground. But we think it more reasonable to infer from the facts found that they visited the ground before the stakes were set, when there would have been nothing to suggest a previous designation and they would of course exercise their jurisdiction over the ground.

All that appears with regard to the time when the committee in fact acted is, that it was appointed by the Superior Court at its February term in Fairfield County in 1882, that it gave public notice on the 14th of April that it would begin its investigation and hearing on the 12th of May, 1882, and that it completed its report on the 16th of January, 1883, except a short supplemental report dated March 26th, which was returned to the court and accepted March 27th, 1883. There is no finding as to the precise time when the committee made that personal inspection which was an important part of its duty, but it is not unreasonable to suppose that when the committee entered upon its investigation on the 12th of May, 1882, it pursued the matter with some degree of diligence until the investigation was completed. This is the more probable from the fact that the committee would naturally make its inspection of the ground during the pleasant weather of summer, rather than in the

fall or winter. There would remain a large amount of work in the hearing of parties and in the preparation of its report which may account for the fact that the report was not completed till midwinter. We think it not too much to assume, in the absence of any express finding on the subject, that the committee explored the waters within its jurisdiction before September 29th, 1882, and at a time when there were no stakes about the grounds in question, and when it would have seemed to the committee to be its duty, and when it was in fact its duty, to investigate their condition.

As the grounds in question were not staked out in the summer of 1882, there was of course nothing to indicate that they had been designated to any person. If the committee had searched the public records it would have found no evidence there of any designation, as the designation of these grounds was not recorded until the 29th of September, 1882, and if the committee had had knowledge of the designation it would have had a right to infer from the neglect both to put the designation on record and to stake out the grounds, that the claim to the grounds had been abandoned. The plaintiff had no rights against the public until such recording and staking out, and it would seem to be the duty of a committee in such circumstances to pass upon the question, important if a future designation should be made, whether the grounds were a natural oyster bed.

But the finding is that the report was offered merely in rebuttal of the defendant's evidence that the ground was at the time of the trial in 1886, and for ten years before, covering the date when the report was recorded, had been a natural oyster bed. In either view it was proper evidence.

Another reason of appeal is that the court erred "in holding that the finding of the committee could be treated as *res adjudicata* against the defendants."

We do not understand from the finding that this question was made upon the trial. The defendants' claim there was in these words—"No finding of said committee could be treated as *res adjudicata* against a private right." It is

enough to say that no private rights of the defendants were involved. They had no rights that were not equally the rights of all others.

The defendants assign two other reasons of appeal, predicated upon the finding that there was an action pending against the present plaintiff brought under the statute of 1876 to procure the removal of the stakes inclosing the ground in question, etc. That statute provides that if it is found in such suit that the stakes have been improperly set, the defendant therein shall be entitled to remove the planted oysters within a limited time. The court finds that the plaintiff planted a certain quantity of oysters and gravel upon the ground in question after that suit was brought.

The two reasons assigned are as follows:—" 1st. That the court erred in holding that a permanent injunction could be granted while the title was in dispute and the question of the title was then in the Superior Court upon a complaint under a statute specifically providing a way to try the title. 2d. In holding that there could be any good faith in law as to the six hundred bushels of seed and the three thousand bushels of gravel planted while a petition was pending to set aside the designation.

It is enough to say that the suit brought under the statute of 1875 has no relation to this one, and evidence regarding it was not properly in the case.

The purpose of the statute of 1875 is not, as the defendants claim, to provide a way for the trial of questions of title, but to effect the removal of stakes improperly set up, by means of which the public are deterred from exercising their rights upon ground belonging to them.

Two other reasons of appeal are stated, but the facts which they assume are not found, and they were properly abandoned upon the argument.

There is no error in the judgment complained of.

In this opinion the other judges concurred.