THE STATE *vs.* CHARLES J. NASH.

New Haven & Fairfield Cos , April T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, Js.

The act of 1885, (now Gen. Statutes, § 2328), designates and describes the natural oyster beds within the jurisdiction of the state. Certain ground was afterwards legally designated to *A*, and had ever since been used for the cultivation of oysters. The defendant took oysters therefrom in violation of Gen. Statutes, § 2358. Held, in a criminal prosecution therefor, that he could not show that the place was a natural oyster bed except by the designation and description of the same as such in the act of 1885.

[Argued April 21st—decided May 28th, 1892.]

INFORMATION in the city court of the city of Bridgeport charging a violation of Gen. Statutes, § 2358, forbidding the taking of oysters from any place legally designated to another person for an oyster bed; the defendant was bound over to the Criminal Court of Common Pleas of Fairfield County and in that court tried to the jury on the plea of not guilty, before *Walsh, J.* Verdict " guilty," and appeal by the defendant for error in the rulings of the court. The case is fully stated in the opinion.

*H. W. R. Hoyt* and *S. Judson, Jr.,* for the appellant.

State v. Nash.

*J. C. Chamberlain* and *W. B. Glover*, for the State.

FENN, J. The defendant, having been convicted in the Criminal Court of Common Pleas for Fairfield County, of a violation of General Statutes, § 2358, namely, of taking oysters from a place in Bridgeport in said county designated for their cultivation, appealed to this court. The taking was admitted, also the designation on October 20th, 1890, of the territory named by the board of shell fish commissioners of this state, pursuant to General Statutes, § 2317, but the defendant claimed that the ground was a natural clam and oyster bed, and therefore not duly designated within the meaning of the law, and that the grant of the franchise, and a subsequent assignment thereof, were for that reason void. And the broad question presented by the various reasons of appeal in this case, confessedly brought to this court as a test one, in the interest of a class known as " natural growth oystermen," who earn their livelihood by procuring oysters from the public natural beds of the state, is, whether it is competent to defend against a charge of this character by evidence that the territory from which the oysters were taken, not included in the locations and descriptions embraced in General Statutes, § 2328, is in fact, and notwithstanding its designation and grant subsequent to the enactment of that statute, a natural oyster bed under state jurisdiction. Accordingly as this question shall be answered by this court in the affirmative or negative, the judgment of the court below must be vacated or sustained, and we will therefore consider it by itself, without separate reference to the various rulings and to the reasons of appeal.

The counsel for the defendant say in their brief that it has been the policy of the state to encourage the planting and cultivation of the large area of territory in Long Island Sound by private enterprise, by every legitimate and reasonable method of protection ; but that the legislature has shown an equal solicitude to preserve the natural beds of the state for the public use ; and that " it cannot be claimed that it is not wise and beneficial to protect the industry of

oyster planting, which in the past ten years has become second to none in this state, but that that industry is not to be advanced to the prejudice of those persons who are not so fortunate as to control capital, and who rely upon the natural beds to furnish them occupation and support." In this we fully concur, and these balanced considerations, if kept in mind, will aid materially in arriving at the intention of the legislature in those enactments, which the defendant's counsel further declare to be "a compilation of divergent views and inconsistent provisions, resulting from the perpetual conflict between the two classes of oystermen."

This court held in *Averill* v. *Hull*, 37 Conn., 320, that the defendant, in a proceeding brought for the confiscation of a vessel used in taking oysters from grounds designated by a town committee, might show that such place was in fact a natural oyster bed, and that such designation would be invalidated by such proof. It is claimed that the reasoning and authority of that decision apply, and demonstrate that the evidence rejected in this case was admissible. And unless the cases are distinguishable by virtue of subsequent legislation, it may be freely conceded that this contention of the defendant is correct. As the law stood when *Averill* v. *Hull* was decided, and prior to 1881, since the state had made no effort to designate and point out its natural oyster beds, nor had empowered the town committees to designate those in town jurisdiction, this was of necessity a proper defense in each case; since otherwise, as the court, SEYMOUR, J., said in that case, if such evidence was "not admissible, the natural oyster beds of the state are subjected to the control of a committee of the town without a hearing and without appeal." But it is manifest that, although necessity made such defense relevant, the right in every case to collaterally attack, by parol evidence, in trials to the jury, the title of those to whom designations were made, must have been disquieting in the extreme to persons desiring to embark in the business of oyster culture. And it was, as we believe, largely for that reason that the legislature, by an act passed in 1881, amended in 1882, now General Statutes, § 2315,

enacted that the state should exercise exclusive jurisdiction and control over all shell fisheries located in a certain designated area of the state, and further provided in what is now General Statutes, § 2316, that a survey and map should be made of all the grounds within that area which had been or ·might be designated for the planting or. cultivation of shell fish, and also a survey of all the natural oyster beds in the area, which should be located and delineated on the map. The object of this survey seems manifest, and it having been accomplished, the legislature in 1885, by public act, (Acts of 1885, chap. 118,) expressly provided that " the locations and descriptions of the natural oyster beds respectively under state jurisdiction are as follows, to wit : " enumerating them with the utmost particularity and precision. And the legislature in 1887 re-enacted that act by approving it as section 2328 of the General Statutes to take effect January 1st, 1888 ; thus declaring, not alone what the locations and descriptions of such beds were in 1885, but that they remained unaltered in 1888, and were intended, as they must have been unless we impute folly to the legislature, as authoritative, permanent and exclusive designations of such grounds under state jurisdiction, subject only to such alterations, if any, as the legislature might from time to time prescribe, or as might be⁾ made in accordance with existing statutory provisions. And the effect of these enactments is, that in a proceeding like the present, and in a case where the grant of the franchise to private parties has been made since such enactment, while the fact that such ground is a natural oyster bed would render the grant invalid, the only proof of such fact which is admissible by way of collateral attack is not by parol evidence, but by showing that such ground is embraced in the locations and descriptions contained in the statute of the natural oyster beds under state jurisdiction.

Any seeming difficulties in the way of our present conclusion resulting from the provisions of certain of the sections of the act of 1881, which are continued in the present revision of the statutes, will disappear if we remember, as

we should, that such provisions, having been enacted prior to the authoritative determination by the legislature in the act of 1885, are now, and so far forth as they continue existent provisions, to be construed in the light of the changed condition which that statute has produced.

It was suggested that these grounds, if not natural oyster beds in 1885, might have been such prior to that time, and within ten years previous to their designation in 1890. The answer to this suggestion may be found in the language of this court in *White* v. *Petty*, 57 Conn., 579, 580.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.