## THE STATE vs. GEORGE BASSETT.

Third Judicial District, New Haven, January Term, 1894. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

In October, 1875, a portion of the navigable waters of the town of East Haven, suitable for planting and cultivating oysters, was, apparently by mistake, not included within the territory by statute assignable for such purpose. The oyster ground committee of such town, however, designated and allotted to one F a place within such non-assignable territory, which has since been held and devoted to the purpose of cultivating oysters. In 1877 an Act was passed (Public Acts 1877, p. 200, § 2) which validated and confirmed "all designations of places for planting and cultivating oysters within the navigable waters of any town, which have heretofore been made by authority of such town through its selectmen or oyster ground committee." *Held* :—

1. That the designation to F was thereby validated and confirmed.
2. That the fact that the place so designated was natural clam and oyster ground did not invalidate the designation.
3. That a willful trespass on the ground so designated was in violation of, and punishable under, § 2381 of the General Statutes.

[Submitted on briefs January 23d—decided March 6th, 1894.]

PROSECUTION for a willful trespass by defendant upon certain designated oyster ground on which oysters were cultivated; brought in the City Court of New Haven, (*Cable, J.,*) and thence by the defendant's appeal to the criminal term of the Court of Common Pleas for New Haven County; in the latter court the defendant was tried by a jury before

*Hotchkiss, J.;* verdict of guilty and judgment thereon and appeal by the defendant for alleged errors in the charge of the court.  *No error.*

*Lucius P. Deming,* for the appellant (defendant).

*George M. Gunn* and *Samuel C. Morehouse,* for the appellee (the State).

TORRANCE, J.    This is a prosecution brought under § 2381 of the General Statutes which reads as follows :—" Every person who shall willfully commit any trespass or injury with any eel spears or other implements on any designated oyster ground on which oysters are being cultivated, shall be fined not more than seven dollars, or imprisoned not more than thirty days, or both."

The *locus in quo* is a part of the bottom of the Quinnipiac river, a tributary of the New Haven harbor, in which the tide rises and falls.    It is situated on the east side of the river, about three hundred and twenty-five feet above the Shore Line Railroad bridge, where the water is navigable. It was originally designated and allotted to Mrs. D. E. Foote of the town of East Haven, for the purpose of planting oysters thereon, by a committee of the town of East Haven in the month of October, 1875.    It came by regular conveyances to Daniel H. Graniss, and was, when the alleged trespasses were committed, in his possession and ownership, properly staked and marked as required by law, and was then used by him for the planting and cultivation of oysters.

The defense, in substance, was that the original designation made in 1875 was void; first, because the committee had no power or authority to make any designation or allotment of ground for the planting and cultivation of oysters; and second, because the *locus in quo* was at the time of such original designation natural clam and oyster ground.    Upon this last point the finding of the court below is as follows :— " It was testified and not contradicted that from time immemorial these flats have been natural clam and oyster grounds;

State *v.* Bassett.

that clams have grown upon them and do grow upon them in great quantities; that they can be readily gathered and dug because of the shallow water at low tide, and that many persons are accustomed to dig clams upon these flats, and have obtained a portion of their entire livelihood in that way; that prior to 1875 the flats were used by clammers without hindrance; that since the designation the owners of the grounds have had constant and increasing difficulty in protecting their rights."

The defendant asked the court to charge, in substance, that if the jury found that the *locus in quo* had been natural clam and oyster ground, the designation made by the committee to Mrs. Foote in 1875, " was illegal, contrary to common law, and void under the statutes of this State;" that the State had never authorized said committee to designate this ground; and that digging on said ground for clams was not a willful trespass under the statute. The court declined to so charge, but did charge in substance that the original designation was a valid one, which gave to Mrs. Foote and her assigns, they complying with the requirements of the statutes relating to this matter in other respects, the exclusive right to occupy and use such ground for the purpose of planting and cultivating oysters thereon. Of this charge and refusal to charge the defendant complains on this appeal.

The questions thus raised on this appeal were considered by this court in the case of the *State* v. *Simpkins* at its December Term 1888, held at New Haven. That case was not reported, but the opinion in the case was filed with the clerk of the Superior Court for New Haven County in whose custody it now is, and we think it is decisive of the present case against the defendant.

That was a prosecution of substantially the same nature as the present one. The *locus in quo* was covered by the waters of the Quinnipiac river, and was situated not far from the *locus in quo* in the present case. The original designation in that case was made in October, 1875, by the same committee that made the original designation in the case at

bar.  In that case (*State* v. *Simpkins*) it is found that the
State " admitted that the ground in question was at the
time of the designation thereof and is now natural clam and
oyster ground, but it was admitted that such ground was
within one of the tributaries of New Haven harbor."

In all essential respects, then, the two cases are in their
main facts identical.  The points made in this case, namely,
that the committee who made the designation in 1875 had
no power to make any designation, and that they certainly
had none to designate natural oyster grounds, were made
and discussed in argument in that case.  In that case this
court expressly held that the action of said committee in
making the designation then in question had been ratified
and made valid by the legislature in 1877.  In the opinion
no notice is taken of the point made that the *locus in quo*
was admitted to be natural oyster and clam ground, but the
court, we think, must be understood as holding that, in New
Haven harbor and its tributaries, such designation might be
made in 1875, even of ground which was natural oyster or
clam ground.  At this time § 6 of Chap. 4, Tit. 16, of the
Revised Statutes of 1875 (p. 214) was in force, which pro-
vides that " the designation of all places within the naviga-
ble waters of New Haven harbor, or its tributaries, which
have been or may be designated to any person for the pur-
pose of planting or cultivating oysters therein in pursuance
of the provisions of this chapter shall be valid, although such
places may have been natural oyster beds, if such designa-
tion is in other respects legal."

The statute forbidding the designation of any natural
clam bed was not passed until 1878.  Public Acts of 1878,
Chap. 100.  The opinion in the case of *State* v. *Simpkins* is
as follows:—

" During more than thirty years the legislature has en-
couraged the cultivation of oysters, by vesting in individuals
the right of private, exclusive ownership of grounds suitable
for that purpose.  The Revision of 1875 went into effect on
the first day of that year.  From that date the law, as therein
found, has been the law concerning that subject, except as

modified by subsequent statutes. By Chapter 4, Part 1, Article 1, Section 1, p. 213, of the Revision of 1875, power was conferred on the selectmen of East Haven, to designate for the planting and cultivation of oysters, ground in a certain specified portion of the navigable waters within the limits of said town ; and upon the selectmen of Orange, a like power in reference to all grounds within the navigable waters of that town, not occupied under any previous designation ; and by § 2, p. 214, a like power was conferred upon a committee of electors to be appointed in every town, in reference to like ground within said town. Thus these two sections make provisions for the designation, either by the selectmen, or by some committee, for all ground in the navigable waters, within all towns, except for that portion of the town of East Haven not included within the boundaries of the territory placed in the jurisdiction of the selectmen thereof. Doubtless the omission to provide for this by the continuation of the power to appoint a committee was an oversight.

" Notwithstanding this omission, the town upon due warning for that purpose, at its annual town meeting holden in October, 1875, appointed a Committee of Electors to make designation of the ground in the navigable waters within its limits, and on October 27th, 1875, that committee designated to B. N. and Stephen Rowe, a certain specified parcel of land, covered by the waters of the Quinnipiac river, within the limits of said town, and within the portion excluded from the jurisdiction of the selectmen thereof, and the complaint is that the defendant subsequently took oysters therefrom.

" At the trial, the State offered in evidence the aforesaid designation by the committee. The defendant objected to the reception thereof, for the reason that it was invalid, because the town of East Haven had no power in October, 1875, to appoint a committee for the designation of grounds for oyster planting, and that said designation had not been confirmed by the legislature. The court excluded the designation, and the defendant had a verdict. The State appeals.

" In 1877, Session Laws of 1877, Chapter 94, p. 200, the

legislature enacted as follows :—' Section 1. Any town may appoint a committee of not more than five electors of such town, to hold office one year, and until others are chosen in their stead, which shall designate suitable places in the navigable waters of said town excepting such places only as the selectmen of said town have exclusive authority to designate, for the planting or cultivation of oysters, clams or mussels, and the town may fill any vacancy that may occur in said committee.'

" ' Section 2. All designations of places for the planting or cultivation of oysters, within the navigable waters of any town, which have heretofore been made by authority of such town, through its selectmen, or Oyster Ground Committee, are hereby validated and confirmed.'

" ' Section 3. Article 1, Part 1, Chapter 4, Title 16 of the General Statutes, Revision of 1875, is hereby repealed, and all acts and parts of acts inconsistent with this act, are hereby repealed.'

" ' Section 4. This act shall take effect from its passage.'

" In view of the fact that section 2 is for healing purposes, and is by its terms, *comprehensive of all places and of all defects*, no good reason can be given for excluding from its beneficent operation a defect so manifest. Indeed, we should rather be bound to presume that one capable of injury to many persons is one principally within the legislative intent. Although it is true that in October, 1875, the town of East Haven was without legislative confirmation to provide for the designation by a committee, in that portion of its water withholden from the selectmen, yet, it did, in form, appoint such a committee, and the committee assumed power to act. It had, in form, the sanction of the town to its proceedings. When we consider the omission which the legislature was endeavoring to supply, we must presume that it intended to heal not only the errors of the illegally appointed committee, but the defects as well, in the appointment of the committee itself ; that is, the legislature of 1877 intended to place all persons in the position which they

would have occupied, if the legislature of 1875 had been perfect. There was an error in the rejection of the offer."

As already intimated we think the opinion thus quoted applicable to, and as against the defendant decisive of, the points raised by him on the present appeal.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.