## OLIVER COOK *vs.* WILLIAM RAYMOND.

Third Judicial District, Bridgeport, April Term, 1895.* ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The designation of a natural oyster bed is void, and cannot affect the right
of the public to take oysters from such bed.

In an action to recover for oysters and clams taken from a bed alleged to
be owned by the plaintiff, the defendant justified upon the ground that
the town designation averred and relied upon by the plaintiff, and
which was made prior to April, 1881, was void, because the ground so
designated was then a natural oyster bed.  *Held :—*

1. That the issue thus raised involved a direct attack upon the validity of
the plaintiff's designation.

2. That inasmuch as the designation in the case at bar was made prior to
the legislation of 1881 and 1885, which established State jurisdiction
over natural oyster beds and defined their location and boundaries by
authoritative records, parol evidence that the *locus in quo* was a natural
oyster bed was the only evidence by which, in the nature of the case,
such fact could be proved, and was admissible.

3. That chapter 110 of the Public Acts of 1893, which required the shell-
fish commissioners to indicate by buoys the natural oyster beds within
the exclusive jurisdiction of the State, and provided that no buoys
should be set so as to include within such natural beds any private or
designated grounds, could not be construed as authorizing them to
alter the location and boundaries of such beds as already defined by
§ 2328 of the General Statutes; and their failure, therefore, to include
within the places as marked by them the *locus in quo*, could not
strengthen or validate the plaintiff's designation.

4. That § 2356 of the General Statutes, providing for the removal of stakes
from an oyster bed which had been improperly staked out, was not
designed as a method of trying questions of title, but merely as a
means to effect the removal of barriers deterring the public from the
exercise of their rights upon ground belonging to them.

5. That the clause of said section which authorized the court to allow any
person a reasonable time in which to remove oysters planted by him
in good faith, was not intended to restrict the rights of the public in
the use of natural oyster beds, nor did it entitle the plaintiff to recover
for the few oysters planted by him which were mingled with those law-
fully taken by the defendant.

The case of *State* v. *Nash,* 62 Conn., 47, commented on and distinguished.

[Argued May 10th—decided June 7th, 1895.]

---

* Transferred to the first judicial district, and heard at Hartford, by agree-
ment of counsel and consent of court.

ACTION in the nature of trespass for unlawfully entering upon oyster ground of the plaintiff and taking and carrying away oysters and clams; brought before a justice of the peace in the town of Darien, and thence by defendant's appeal to the Court of Common Pleas for Fairfield County where the case, upon the facts found by the court, *Curtis, J.*, was reserved for the advice and consideration of this court. *Judgment advised for the defendant.*

The plaintiff claimed under a designation by the authorities of the town of Darien, and the first count alleged an unlawful and forcible taking of oysters and clams then and there being cultivated by the plaintiff; the second count alleged a like taking of oysters and clams then on the premises, and the property of the plaintiff.

The case is sufficiently stated in the opinion.

*Levi Warner* and *J. Belden Hurlbutt*, for the plaintiff.

The evidence of the buoying of the grounds, and the planting of them by the plaintiff in good faith, and the fact that the oysters so planted were taken by the defendant, was admissible. *White* v. *Petty*, 57 Conn., 579.

Could the defendant prove by parol that the ground in question was, when designated, a natural oyster and clam bed? Under § 2328 of the General Statutes, as amended by chapter 110 of the Public Acts of 1893, this evidence was not admissible. *In re Clinton Oyster Ground Committee*, 52 Conn., 9; *State* v. *Nash*, 62 id., 50; *White* v. *Petty, supra*.

The question whether this was a natural oyster bed, could not be raised under these pleadings. The only way in which that question can be tried and determined is by a direct application to the court to remove the buoys. This remedy was first given by Act of 1870, Chap. CXLII., and has ever since remained a part of the statute law of this State, §§ 2324, 2356.

The commissioners were competent to testify where they located the buoys required by the law of 1893, and that the grounds in question were outside of the beds buoyed off by them.

The evidence offered to prove what the shell fish commissioners *did not do*, and why they did what the legislature directed them to do, was irrelevant, and did not tend to prove any issue in the case. It is enough to say that they did what they were directed to do. The reason for doing it was the reason of the legislature, and not of these commissioners. Why they did not do certain things which they had no power or right to do, is of no importance, nor was it important to show what in their opinion the law authorized them to do.

*John H. Perry* and *Russell Frost*, for the defendant.

The finding shows that the ground in question was designated to individuals by the town committee of Darien, between February 4th, 1879, and February 16th, 1881, and consequently before the State Commission Act went into effect on May 1st, 1881; that when so designated it was both a natural oyster bed and a natural clam bed, and that it constitutes a portion of the Fish Island natural bed as the same was ordered to be located by § 2, Chap. 160, Pub. Acts, 1881, and the location so ordered ratified, when made, by Chap. 118, Pub. Acts 1885, (now § 2328, General Statutes) ; that on the first occasion the defendant took natural growth clams therefrom, and on the second occasion oysters, some of which were natural growth.

The defendant claims upon these facts that the plaintiff does not own the " plantation " in question, that the designations thereof to his grantors were utterly void, and that it is a public natural oyster and clam bed, upon which he had a perfect right to go and do what he did. The provisions of § 4, p. 214, Rev. of 1875, made it unlawful for " any committee or selectmen to designate, or any person to mark, stake out, or inclose any natural oyster bed," and Chap. 100, Pub. Acts of 1878, provided that " no committee or selectmen of any town shall designate, and no person shall mark, stake out, or inclose for the cultivation of oysters, clams or mussels, any natural clam bed." Both of these provisions were law at the dates of the original designations in ques-

tion, and still remain so.   Gen. Statutes, §§ 2317, 2325, 2349, 2357, 2371.   The designation of natural oyster ground, however formal, is, and for years has been, absolutely nugatory, and does not confer even color of title.   *Town of Clinton* v. *Bacon*, 56 Conn., 508; *Averill* v. *Hull*, 37 id., 320; *In re Clinton Oyster Ground Committee*, 52 id., 10; *Town of Clinton* v. *Buell*, 53 id., 266; *White* v. *Petty*, 57 id., 576; *State* v. *Nash*, 62 id., 47.

The common law upon this subject, as interpreted in other jurisdictions, is, perhaps, not in all respects as strict as in Connecticut, but it is quite strict enough to answer our present purpose.   The following cases hold that any member of the public may take oysters planted by another, unless they were planted upon what was not a natural oyster bed, and by stakes, buoys and oversight, kept in the visible possession and under the control of the planter.   *Fleet* v. *Hegemen*, 14 Wend., 42; *Decker* v. *Fisher*, 4 Barb., 592; *Brinckerhoff* v. *Starkins*, 11 Barb., 248; *State* v. *Taylor*, 27 N. J. Law, 117; *Lowndes* v. *Dickerson*, 34 Barb., 586; *Post* v. *Kreischer*, 103 N. Y., 110.

HAMERSLEY, J.   The complaint is in the nature of an action of trespass.   The defendant justifies.   The main fact in issue is the validity of the plaintiff's title to the oyster plantation described in the complaint.   The material facts bearing on the question of title are as follows:—

The ground in question was designated to individuals for the planting and cultivation of oysters thereon, between February 4th, 1879, and February 16th, 1881; and the rights acquired by such designation were, prior to the alleged trespass, conveyed to the plaintiff.   At the time of designation the ground designated was a natural oyster bed and a natural clam bed (this fact was found upon parol evidence, objected to by the plaintiff because the evidence was parol, and received subject to the objection).   The designated ground constitutes the westerly end of one of the natural beds under State jurisdiction, (known as Roton Point and Fish Island natural beds), located and described in § 2328 of the General

Statutes. Pursuant to the provisions of chapter 110, Public Acts of 1893, the State shell fish commissioners caused the Roton Point and Fish Island natural beds to be buoyed, leaving out the ground now in question (evidence of this fact was objected to by the defendant as immaterial, and admitted subject to the objection).

Upon the facts so found, judgment must be rendered for the defendant.

The designation of a natural oyster bed is void, and cannot affect the right of the public to take oysters on such ground. The fact that ground designated was at the time of designation a natural oyster bed, may be proved by parol. *Averill* v. *Hull*, 37 Conn., 320.

The plaintiff claims that since the legislation of 1881 and 1885, parol evidence of such fact is inadmissible; and cites *State* v. *Nash*, 62 Conn., 47, in support of his claim.

By the Act of April 14th, 1881, the legislature placed all shell fisheries within the area therein described, under the exclusive jurisdiction and control of the State, and empowered the commissioners of shell fisheries to grant, in the name of the State, franchises for cultivating shell fish within that area; it placed all shell fisheries not within that area, within the jurisdiction and control of the towns in which they are located, and authorized the town authorities to grant franchises for cultivating shell fish within this area of town jurisdiction; it provided for the record of future grants that might be made, either by the State, or by the town; it forbade all future grants of franchises in any natural oyster or clam bed; it validated all designations and transfers of oyster grounds previously made, except designations made of natural oyster beds, such designations remaining after the passage of the Act, as they were before, absolutely void; it directed the shell fish commissioners to cause a survey to be made of all the natural oyster beds within the area of State jurisdiction, and to locate and delineate such natural beds on said map, and report to the General Assembly.

In 1885 the locations and designations of the natural oyster beds under State jurisdiction, as made by the commis-

sioners of shell fisheries pursuant to the Act of 1881, were by the Act of April 23d, 1885 (Public Acts, 1885, p. 525), " accepted, ratified, established and confirmed by the State as follows, to wit : " specifying with mathematical accuracy the boundaries of each natural bed, including the Roton Point and Fish Island natural beds.

*State* v. *Nash, supra,* holds that " the effect of these enactments is, that in a proceeding like the present (*i. e.,* a criminal complaint for taking oysters from a plantation within the State jurisdiction, and designated by the shell fish commissioners since 1885), and in a case where the grant of the franchise to private parties has been made since such enactment, while the fact that such ground is a natural oyster bed would render the grant invalid, the only proof of such fact which is admissible by way of collateral attack is not by parol evidence, but by showing that such ground is embraced in the locations and descriptions contained in the statute of the natural oyster beds under State jurisdiction." Neither the precise point decided, nor the reason of the decision, affect the present case. *State* v. *Nash* is dealing with a collateral attack upon a designation,—here we have a direct attack. The validity of the designation is the very thing, and substantially the only thing, put in issue by the pleadings ; there is no way by which the validity of a designation of a natural growth oyster bed, made prior to April, 1881, can be attacked more directly than in an action of trespass where, as in this case, the plaintiff alleges a special title to the *locus in quo* by virtue of the designation, on which allegation issue is joined.

Again, *State* v. *Nash* is confined to grants made by the State since the law establishing State jurisdiction of shell fisheries, and holds that in a collateral attack on such grants, evidence that the ground covered by the grant is in fact a natural oyster bed, must be confined to showing that the ground in question is embraced within the locations and descriptions of natural beds contained in the statute ; such record evidence of the fact that at the time of designation the ground in question was not a natural oyster bed, cannot be collaterally attacked. But when there is involved the

validity of a grant made by a town, prior to the establishment of State jurisdiction and prior to the establishment of any statutory or authoritative record of natural oyster beds, there is then no evidence that can be produced of such grounds being at the time of designation a natural oyster bed, except parol evidence; the conditions are then exactly the same as when *Averill* v. *Hull, supra,* was decided. Analogy between the two cases is impossible, but if it were possible it would not benefit the plaintiff, because it appears that the ground covered by his designation is embraced within the statutory description of natural oyster beds.

The plaintiff, however, claims that chapter 110 of the Public Acts of 1893 amended § 2328, so as to exclude from the natural oyster beds established by that section, any ground the shell fish commissioners may leave out in buoying one of those beds as directed by the Act.

Such effect cannot be given to the Act of 1893. This Act does not purport to amend § 2328, nor to repeal or alter any existing legislation; on the contrary it treats the existing statutory description of the Roton Point and Fish Island beds as conclusive. It is simply administrative, and directs the shell fish commissioners to mark those established beds and two others named, with State buoys, and provides a penalty for displacing such buoys. The plaintiff's claim is based wholly on the following sentence : "No buoys shall be so set or lines so run as to include within the natural or public beds any private or designated grounds." The object of this direction and the meaning of the language used may, as claimed, be open to doubt; but it is certain that this phrase cannot be construed as authorizing the shell fish commissioners, in executing an order to place buoys for marking the natural oyster beds as established by law, to alter that law and to make a new statute establishing the natural oyster beds within the State jurisdiction.

The plaintiff claims in his brief, that the question whether the *locus* was a natural oyster bed, could not be raised under the pleadings in this case, because the proceeding under § 2356 for the removal of stakes from an oyster bed which

has been improperly staked out, is the only way in which the plaintiff's title can be tested.

If the plaintiff can properly raise this question upon the record before us, and if § 2356 applies to an oyster bed within the exclusive jurisdiction of the State, the claim is nevertheless unfounded. There is nothing in § 2356 which prevents the public from exercising its right of fishing on natural oyster beds which individuals attempt to appropriate under a pretended designation. The provisions of this section have been in force in their present form since 1870, and their meaning has been settled. In the case of the *Application of the Clinton Oyster Ground Committee*, 52 Conn., 10, the Act of 1870 was treated as furnishing a specific remedy against trespass on public grounds, in addition to the right of any one to take oysters from grounds so illegally designated and to defend against prosecution or action for such taking by showing that the ground was a natural oyster bed. *Clinton* v. *Bacon* was a petition for an order for the removal of stakes under § 2356. The ground in question had been designated and staked out in 1863, and had since been continuously kept inclosed; but during all that time it had been a natural oyster bed. In advising a judgment for the plaintiff, this court holds that the proceeding is not an action to test the title, but is in the nature of an equitable proceeding to remove a cloud upon the title of the State, and says: " The pretended designation is void, and the title of the public to the ground is not affected by it, but it, and the stakes set up by the defendant as evidence of it, constitute a cloud upon the title to the ground and tend to deter the public from the enjoyment of it." 56 Conn., 519. In *White* v. *Petty*, 57 Conn., 582, the court says: " The purpose of the statute of 1875 (Act of 1870) is not, as the defendants claim, to provide a way for the trial of questions of title, but to effect the removal of stakes improperly set up, by means of which the public are deterred from exercising their rights upon ground belonging to them." In *State* v. *Bassett*, 64 Conn., 217, in a prosecution for willful trespass upon a designated bed, parol evidence of title in the State by reason of the ground being

Cook v. Raymond.

a natural oyster bed, and the consequent invalidity of the designation, was admitted, and its admissibility was unquestioned.

The plaintiff also claims that § 2356 of the General Statutes, in providing that the court when ordering the removal of stakes inclosing an oyster bed improperly staked, shall (if oysters have been planted or improvements made in good faith before the petition for removal was brought) allow a reasonable time for the removal of such oysters and improvements, gives to persons who in good faith trespass upon an oyster bed belonging to the public, the right to recover in an action of trespass the value of any oysters they may plant on such bed and which may be mingled with oysters lawfully taken therefrom, and claims that, since some of the oysters taken by the defendant were proved to have been planted by the plaintiff in good faith, the plaintiff is entitled to a judgment for the value of such oysters. The value of all the oysters taken is found to be one dollar, and it appears that the plaintiff did not prove whether the planted oysters mingled with those taken were two or more, or that they had any value; and the plaintiff does not state the amount of the judgment which he claims. The result, however, would be the same if the finding showed the number of cents which represent the value of the planted oysters. This provision of § 2356 was intended to protect, from the injury of a sudden and forcible ejectment, a trespasser upon public grounds who has acted in good faith; it does not restrict the rights of the public in the use of natural oyster beds.

The Court of Common Pleas is advised to render judgment for the defendant.

In this opinion the other judges concurred.