ELWOOD KEISTER'S APPEAL FROM SHELL FISH COMMISSIONERS.

Third Judicial District, Bridgeport, October Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The oyster-ground committee of the town of New Haven had no jurisdiction in 1876 to make a valid designation of oyster ground located within the navigable waters of the adjoining town of Orange; and therefore an attempted designation of the *locus in quo* in the present case was *held* to be void.

In 1884 the Superior Court, pursuant to statute, located the natural oyster-beds of the town of Orange and caused their boundaries to be recorded. The easterly boundary was described as "running along the westerly side of the designated lots in the New Haven harbor channel," and a material question in the present case was whether or not the *locus in quo* was a "designated lot" in 1884. *Held* that inasmuch as the Superior Court was laying out the boundaries of a natural oyster-bed within the town of Orange, whose selectmen had made no designation of the *locus*, and as the attempted designation by the oyster-ground committee of the town of New Haven in 1876 was never completed by stakes or buoys as required by statute, the *locus* was not a "designated lot" in 1884, and was therefore included in the official description of the natural oyster-grounds of the town of Orange.

Such location by the Superior Court in 1884 did not create natural oyster grounds but merely ascertained the boundaries of those then

existing, and was admissible, though not conclusive, evidence of their extent in 1876.

The divisional lines between the navigable waters of one town and those of another are meridional lines extending south, from the termini of the lines separating the territorial proprietorship of the towns, to the line between Connecticut and New York in Long Island Sound.

Although the territorial proprietorship of a town terminates at high-water mark, yet the undoubted power of the State to create individual ownership in oyster grounds below high-water mark may be exercised through the instrumentality of the towns fronting on the Sound.

The intent of the State to confer this power upon the town of Orange is clearly shown by the provisions of § 1, p. 213, of the Revision of 1875, giving its selectmen the exclusive right to designate oyster grounds within "the navigable waters" in such town, and by chapter 22 of the Public Acts of 1878, authorizing them to designate "any ground covered by the waters of Long Island Sound" lying within certain east and west limits.

General Statutes, § 3222, provides for the settlement by the shell-fish commissioners—subject to the right of appeal to the Superior Court—of all questions touching the ownership or location of shell-fish grounds within the exclusive jurisdiction of the State, on petition of "any person interested therein." *Held* that one who earned his livelihood by gathering oysters from the public natural oyster-beds of the State had a special and lively interest in resisting unlawful encroachments upon such beds.

Argued October 30th—decided December 21st, 1914.

PETITION to determine whether certain land covered by the waters of New Haven harbor and used for the cultivation of oysters was a natural oyster-bed, as contended by the petitioner, or was the private property of the respondent, The Sealshipt Oyster System, brought to the Board of Shell Fish Commissioners and thence by appeal of the petitioner to the Superior Court in New Haven County; the court, *Holcomb, J.*, found the facts and rendered judgment in favor of the petitioner, from which the respondent appealed. *No error.*

*Albert McC. Mathewson*, for the Sealshipt Oyster System, the respondent.

*Walter J. Walsh*, with whom was *Charles F. Mitchell*, for Keister, the petitioner.

BEACH, J. The petitioner made application to the Shell Fish Commissioners under § 3222 of the General Statutes, as amended by chapter 209 of the Public Acts of 1907, p. 762, to have a certain oyster ground known as 083 on the official map of the Shell Fish Commission declared a part of the natural oyster grounds of the town of Orange. The respondent, the Sealshipt Oyster System, claims title to the lot under a designation made by the oyster ground committee of the town of New Haven, dated June 29th, 1876, to John M. Button and twenty-nine others, pursuant to § 3 of chapter 4, Title 16, of the Revised Statutes of 1875, p. 214.

It appears from the finding of the trial court that neither Button, nor any other of the twenty-nine grantees, ever staked or buoyed out the lot as required by the statute, or ever planted or cultivated any shell-fish thereon, or paid taxes thereon, or took possession, or exercised any act of ownership over it, other than to have the designation recorded in the New Haven oyster ground records. Button died in 1905, and the lot was not inventoried or administered upon as part of his estate. In 1907 the boundaries of the lot were, for the first time, marked by stakes or buoys by the surveyor of the Shell Fish Commission, and in 1911 the widow of John M. Button, by written assignment, attempted to convey her interest in the lot to the Sealshipt Oyster System.

It is also found that for forty years prior to 1907, and during each year, all of the natural growth oystermen, including, for many years, the petitioner, gathered oysters from this lot, claiming the right to do so, which right had never been questioned or disputed; and that

Button himself, in company with other oystermen, frequently gathered oysters from the lot, treating it as part of the natural public bed, and making no claim of any private right or interest therein.

In 1884 the Superior Court for New Haven county, pursuant to the statute, located the natural oyster-beds of the town of Orange, and caused the boundaries thereof to be recorded. The trial court found that the lot in question is, and was in 1876, located within the navigable waters of the town of Orange; that it is and was a part of the natural oyster-beds of that town; and that the oyster ground committee of the town of New Haven had no jurisdiction to make the original designation to John M. Button. It also found that if Button and his associates ever acquired any valid interest by such designation, they have abandoned and forfeited the same. The assignments of error which we deem it necessary to discuss relate to the findings above stated.

We take up, first, the question of jurisdiction. By § 1, chapter 4, Title 16, of the Revision of 1875, p. 213, the selectmen of Orange had the exclusive right to designate oyster grounds within "the navigable waters in such town," subject to the general rule that a designation of ground included in a natural oyster-bed is void. *Averill* v. *Hull*, 37 Conn. 320, 322; *Cook* v. *Raymond*, 66 Conn. 285, 289, 33 Atl. 1006. The location of the natural oyster ground by the Superior Court in 1884 did not create a natural ground, but ascertained the boundaries of a then existing natural ground. *In re Application of Clinton Oyster Ground Committee*, 52 Conn. 5, 10. The location was conclusive evidence of the boundaries of the natural bed in 1884, and admissible evidence of its extent in 1876. *White* v. *Petty*, 57 Conn. 576, 579, 18 Atl. 253. The easterly boundary of the natural oyster ground in question is described as

"running along the westerly side of the designated lots in the New Haven harbor channel"; and the location of lot 083 is such that, if it was a "designated lot" in 1884, it is excluded from this description, but if not a designated lot, it is included as a part of the natural oyster-bed.

Considering that the Superior Court was laying out the boundaries of a natural oyster-bed within the town of Orange, and that there had been no designation of this lot by the selectmen of the town of Orange, and that the attempted designation by the oyster ground committee of the town of New Haven was never completed by stakes or buoys, as required by statute, we think that lot 083 was not, in 1884, a designated lot within the meaning of the official description, and that it was included by that description in the natural oyster ground of the town of Orange.

We also think the Superior Court was right in holding that the oyster ground committee of the town of New Haven had no jurisdiction to make a valid designation of lot 083, because it was located in the navigable waters of the town of Orange.

In *Rowe* v. *Smith*, 48 Conn. 444, this court, in passing upon the validity of a designation made by the New Haven oyster ground committee in 1875, determined that the divisional lines between the navigable waters of one town and those of another were meridional lines extending south from the termini of the lines separating the territorial proprietorship of the towns to the line between Connecticut and New York in Long Island Sound.

Orange was incorporated as a separate town in 1822, and, as far as material to this case, the dividing line between New Haven and Orange was described as "beginning at the Sound and extending through the harbor by the point of the beach to the mouth of West River

and thence up said river through the center thereof, to the bridge." In 1874 the Superior Court established more definitely the dividing line, and, as shown upon the map made part of the finding, the point at which the line extending through the harbor intersects the line which was established as marking the northerly limit of Long Island Sound, is so located that a meridional line extending due south therefrom would locate the whole of lot 083 well within the navigable waters of the town of Orange. The respondent claims that the jurisdiction of the town of Orange does not extend south of the line established in 1874 as the northerly line of the Sound. But this same question was definitely settled in *Rowe* v. *Smith*, 48 Conn. 444, where it was held that, although the territorial proprietorship of New Haven along a portion of its southern boundary terminated at high-water mark, because the grant to New Haven did not undertake to convey the title of the Colony to the shores of the sea, yet the undoubted power of the State to create individual proprietorships in oyster grounds below high-water mark might be exercised through the instrumentality of the towns fronting on the shore. The intention to do so in the case of the town of Orange is plainly shown by the Act of 1875, giving to the selectmen of the town of Orange the exclusive right to designate oyster grounds within the navigable waters in such town. The same intent is expressed in chapter 22 of the Public Acts of 1878, p. 273, by which the selectmen of the town of Orange are authorized to designate "any ground covered by the waters of Long Island Sound" lying within certain east and west limits. Whether tested by the Act of 1878, as interpreted on the map, respondent's Exhibit A, or by the rule laid down in *Rowe* v. *Smith*, 48 Conn. 444, the lot in question is within the navigable waters of the town of Orange. It follows that the trial court was correct in

so finding, and that the attempted designation by the oyster ground committee of the town of New Haven was void. It also follows that as lot 083 was not in 1884 a validly "designated lot," it is included in the description of the natural oyster-beds of the town of Orange, as laid out by the Superior Court.

These conclusions make it unnecessary to pass upon the other questions raised by this appeal, except the claim that the petitioner has not a sufficient special interest in the controversy to maintain this action.

The respondent's argument is that an unlawful occupation of a portion of a natural oyster-bed, under a claim of right, is in effect a public nuisance which cannot be abated at the suit of a private plaintiff unless he has suffered some private, direct and material damage beyond the public at large. It is unnecessary to determine whether the petitioner has such a special interest as would entitle him to maintain an action of this kind at the common law, for in this case the remedy is given by the statute (§ 3222), the opening words of which are as follows: "All questions and disputes touching the ownership, title, buoys, boundaries, ranges, extent, or location of any shell-fishery grounds within the exclusive jurisdiction of the State may be referred to and settled by said commissioners, who are hereby empowered, on petition of any person interested therein, to summon all the parties in interest,"—and to hear and determine the controversy subject to a right of appeal to the Superior Court.

This petitioner is a natural growth oysterman, and as such belongs to a recognized class of persons who earn their livelihood by gathering oysters from the public natural oyster-beds of the State. *State* v. *Nash*, 62 Conn. 47, 48, 25 Atl. 451. Practically he has a special and very lively interest in resisting unlawful encroachments by private interests on natural oyster-beds.

The statute was evidently intended to provide a convenient method of settling a very wide range of disputes concerning shell-fishery grounds within the exclusive jurisdiction of the State, including natural as well as private oyster grounds; and we think it is too clear for extended argument that the petitioner is a "person interested" in this dispute within the meaning of the statute. The oyster ground in question is brought within the jurisdiction of the Shell Fish Commission by § 4 of chapter 209 of the Public Acts of 1907, p. 762.

There is no error.

In this opinion the other judges concurred.