FREDERICK BROWER vs. LEWIS P. WAKEMAN, ET ALS.

Third Judicial District, Bridgeport, October Term, 1913.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A public beach may consist of the shore between high and low-water mark, or of a strip of the shore lying above high-water, which, by dedication or abandonment, has become a public beach.

The title to that part of the beach below high-water is in the State as the representative of the public, and can be conveyed by the General Assembly as such representative.

The grant to the early proprietors conveyed only to high-water. Such portion of the land covered by the grant as was not alloted to individuals, upon abandonment by the proprietors became common and undivided land open to the use of the general public, with the title thereto in the State, as the proper representative and guardian of such interest, and this title may be transferred or conveyed by Act of the General Assembly.

A Special Act of 1907 (p. 574) provided that "any common or undivided

Brower *v.* Wakeman.

lands situated within the town of Westport, that may have formerly belonged to the town of Fairfield or to the proprietors therein, shall belong to and be under the control of the town of Westport." *Held* that this Act did not convey the beach below high-water, but did convey that part of the beach above high-water which had been abandoned by the proprietors and become common and undivided land; and that prior to its passage Westport had no title to or control of this part of the beach.

Prior to 1907 Westport assumed authority over this beach and authorized the issuance of permits by its officials to occupy lots thereon upon compliance with certain conditions.  In 1905 or 1906 the plaintiff, under a permit of occupancy for a year, given by one of the selectmen, and upon payment of a license fee, built a bathhouse upon a part of the beach above high-water, and thereafter continued to occupy it with the knowledge of the town, notwithstanding the year had long since expired.  The conditions for the issuance of this license were not complied with by the town officials. The town in May, 1909, pursuant to its vote, by publication and by one of its selectmen, gave the plaintiff notice to remove his bath-house, and in the following August the selectmen, the defendants, pursuant to said vote, removed it and its contents, doing no unnecessary injury to them.  *Held* that the license to the plaintiff was revocable notwithstanding his expenditure made in reliance thereon; that his occupancy was, under the circumstances of the case, under color of right; that a revocation of his license could not be had except upon reasonable notice and after a reasonable opportunity to remove his property; that the relation between the plaintiff and the town was not that of landlord and tenant, and hence he was not entitled to the statutory notice to quit; and that the notice and opportunity given him to remove the bath-house was reasonable.

An occupancy of land begun with permission of the owner and continued, after the permit has expired, with his knowledge, is under color of right, but the permit or license is revocable notwithstanding an expenditure has been made in reliance upon its continuance; such licensee is entitled, however, to a reasonable opportunity to remove his property before the revocation can become effective.

An appellant will not be permitted to seize upon the inadequacy of the finding respecting some fact underlying a claim of law which was not contested upon the trial nor assigned as a ground of error; and this is especially true when the memorandum of decision renders it clear to the appellant that had the fact omitted from the finding been supplied, it would have been found adversely to him.

A mere licensee is not entitled to the statutory notice to quit which must be given by a landlord to his tenant.

Argued October 31st, 1913—decided March 5th, 1914.

ACTION in the nature of trespass for wilfully destroying a bath-house and its contents, alleged to be owned by the plaintiff, brought to and tried by the Court of Common Pleas in Fairfield County, *Scott, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *No error.*

*Spotswood D. Bowers,* with whom was *Edward J. Quinlan,* for the appellant (plaintiff).

*Stiles Judson,* for the appellees (defendants).

WHEELER, J. The action is one to recover damages for the removal of a bath-house and the destruction of it and its contents. The defendants justify in several ways, upon one of which the trial court rendered judgment in their favor. This justification was that the bath-house stood on a public beach owned by the town of Westport, and that the defendants, acting as selectmen and under direction of a town meeting, removed the bath-house and its contents, after the plaintiff had received notice of the intended action and after his failure or refusal to remove them.

The decision of two questions of law and one of fact will be decisive of this appeal. 1. Did Westport have title to or the right to that part of the beach on which the bath-house stood? 2. Was the plaintiff's occupation such as to entitle him to a reasonable notice prior to the removal and destruction of the bath-house and its contents? 3. If so, was this given him?

The plaintiff insists that the location of the bath-house is, by the finding, upon a public beach below high-water mark, and therefore the town neither has nor could acquire a right of ownership or of possession to this part of the beach. "A public beach is one left by the State, or those claiming it, open to the common

use of the public, and which the unorganized public and each of its members have a right to use while it remains such." *Dawson* v. *Orange,* 78 Conn. 96, 119, 61 Atl. 101. It may be that part of the shore between high and low-water mark; or a strip of shore lying above high-water, which, by dedication, has become a public beach. *Dawson* v. *Orange, supra.*

The title to that part of the beach below high-water is in the State as the representative of the public. The town has no ownership or control of this. *Simons* v. *French,* 25 Conn. 346, 352; *Church* v. *Meeker,* 34 Conn. 421, 427; *New Haven Steamboat Co.* v. *Sargent & Co.,* 50 Conn. 199, 202; *Farist Steel Co.* v. *Bridgeport,* 60 Conn. 278, 282, 22 Atl. 561; *Dawson* v. *Orange,* 78 Conn. 96, 118, 119, 61 Atl. 101. The General Assembly could create a proprietorship in such a beach, and grant to the town such a proprietorship. *Rowe* v. *Smith,* 48 Conn. 444, 446. It has not attempted to convey to Westport any of the shore below high-water mark. The Special Act of 1907, p. 574, upon which the defendants rely, recites: "Any common or undivided lands situated within the town of Westport, that may have formerly belonged to the town of Fairfield or to the proprietors therein, shall belong to and be under the control of the town of Westport." This grant was of common or undivided lands, formerly belonging to the town of Fairfield or to the proprietors therein. The shore below high-water, as we have seen, never belonged to the town, or to the proprietors therein. If, then, the locus of the bath-house was below high-water, the town and the officials of the town had no right or control over it.

One paragraph of the finding recites that the bath-house was located upon a beach extending into the waters of Long Island Sound. It is upon this recital the plaintiff bases his claim that the finding locates the

bath-house below high-water mark. As we read the finding in its entirety and mark its conclusions, we think it clear the trial court located the bath-house above and not below high-water. The beach may have extended above high-water and below it, hence into the waters of Long Island Sound. The trial court expressly finds that this locus was contained in the grant to the proprietors of Fairfield, and that it was never alloted to any individual. The grant to the early proprietors conveyed only to high-water. *Dawson* v. *Orange*, 78 Conn. 96, 119, 61 Atl. 101; *Church* v. *Meeker*, 34 Conn. 421. This was a fact of early recognition in our law, and there is nothing to indicate that the court did not have in mind this historic fact in making up its finding.

From the finding we learn not only that the locus of the bath-house was upon the beach above high-water, but that this part of the beach formerly belonged to the early proprietors; that they never conveyed it; that it has always been used by the general public, and was finally abandoned by the proprietors to the general public and became common and undivided land. This did not give the town any title to or proprietary interest in this undivided land of the shore. The proper representatives of the interest of the general public would be, as in the case of a highway, a number of the public, or the State. The State, through the General Assembly, could convey the rights of the public in the shore between high and low-water mark. *Rowe* v. *Smith*, 48 Conn. 444, 446. Likewise the General Assembly could convey the rights of the public to the part of the beach above high-water mark abandoned to them. This it did by the Special Act already quoted. By virtue of this Act Westport became the owner of this part of the beach, and, since this Act went into effect, has had the right to its exclusive control.

Westport, in 1903, before the passage of this Act, assumed, without right, authority over Compo Beach by action taken at a town meeting in voting to appoint a committee "to investigate and ascertain what measures the town should employ to secure to the public the greatest possible benefit that can be derived from the shore property at Compo Beach and report." The report of this committee was accepted at a subsequent town meeting, and its recommendation adopted, that permits be granted by the town clerk for one year on payment of $1 to any one to occupy a lot on Compo Beach from those laid out upon a chart to be filed in the town clerk's office. And it was further voted that the applicant have the right to renew the permit as long as the present system continued. Although no chart was made, and the town clerk did not issue such permits, the selectmen of the town individually did grant such permits, and the town received the money therefor, and no objection was ever made to this course. The plaintiff received in 1905 or 1906 an oral permit from one of the selectmen to place a bath-house on this beach, paid the fee charged, and built his bath-house while having the permit, and maintained it until its removal in 1909 by the town. No moneys were received by the town from such permit after 1906, and the plaintiff paid nothing after his first fee; apparently the town did not request it. Since the plaintiff's occupancy was because of his permit, and the town received his money and knew of his occupancy, it must be held to have been begun and maintained under color of right. His continued occupancy after Westport had acquired, through the Special Act of 1907, ownership of this part of the beach, and with the knowledge of the town under the circumstances of this case, constituted a continuing license. The term of the license having long since expired it was revocable, and an expenditure

made in reliance upon the license did not prevent the revocation. *Foot* v. *New Haven & N. Co.*, 23 Conn. 223, 224; *Collins Co.* v. *Marcy*, 25 Conn. 239, 241; note to 19 L. R. A. (N. S.) 700; note to 25 L. R. A. (N. S.) 727; note to 49 L. R. A. 497.

When the licensee has placed buildings or other personal property upon the premises licensed, the revocation cannot be effective until the licensee has had notice of it and a reasonable opportunity in which to remove his property. See authorities cited, *supra; Ely* v. *Cavanaugh*, 82 Conn. 681, 684, 74 Atl. 1122; *Coleman* v. *Lewis*, 27 Pa. St. 291; note to 44 L. R. A. (N. S.) 557, 568. The plaintiff licensee was entitled to notice of revocation and a reasonable time for removal of his property. The town at no time assumed its right to remove the bath-house of the plaintiff without first giving him notice to remove it. Its position is that it gave the plaintiff due notice before it removed his bath-house. A reasonable notice of removal was published on May 7th, 1909, and the plaintiff had knowledge of this notice. One of the selectmen personally directed the plaintiff to remove his bath-house. The plaintiff had notice to remove, but the record does not specifically recite on what day the plaintiff had knowledge of this published notice, or on what day the selectmen directed him to remove. The bath-house was not removed until August 9th, 1909. There was no unnecessary injury in its removal.

The plaintiff now contends that the finding shows that he "was not given a proper notice of revocation and a reasonable time to remove his property." So that the final question for discussion is: Was the notice of revocation and removal to the plaintiff an unreasonable one, and if so, do his reasons of appeal permit him to take advantage of this claim? So far as the record goes it seems to support the conclusion that the notice

of revocation and removal was not an unreasonable one. The recital in the record of the town meeting of May 24th, 1909, is that the selectmen had already ordered the removal of the bath-houses from Compo Beach. The votes had and action taken at this meeting authorized such action. These were not required to give the selectmen power to act; their general powers gave them that. If the order to the plaintiff by one selectman was had, as this recital would seem to indicate, prior to the day of this meeting, the plaintiff obviously had reasonable notice of revocation and removal. If the order to the plaintiff was had after this meeting, the law presumes that it was given pursuant to its authority and in accordance with the selectmen's duty to give the order within a reasonable time after the action taken at this meeting. The necessary legal conclusion would be that the plaintiff received this order within a reasonable time after May 24th; if so, the period between the date of such order to him and August 9th, the date of removal, was in law a reasonable notice of revocation and removal.

Moreover, the plaintiff cannot now be permitted to take advantage of the failure of the finding to specifically state the facts surrounding the date of notice to him, nor of his claim that the finding shows that the notice of revocation and removal was not given him a reasonable time before the removal was had. Had this claim been made upon the trial, it is clear that the date of notice of revocation and removal would have appeared in the finding, together with the conclusion of the court as to the reasonableness of the notice. This fact was not made a part of the plaintiff's draft-finding, nor did it appear in his claims of law made upon the trial, nor is it found among his assignments of error on appeal. The plaintiff cannot have been misled, for in its memorandum of decision the trial court definitely

held that "after the receipt of ample notice to remove their bath-houses" the plaintiff and the other bath-house owners had refused to remove them from the beach. It thus appears that the course of the plaintiff on appeal was taken with full knowledge that the court had held the notice given ample. It would be most unfair to permit the plaintiff at this time to seize upon the inadequacy of the finding to develop the facts surrounding a claim of law never contested, and base its claim for a reversal thereon. *Banks* v. *Warner,* 85 Conn. 613, 617, 84 Atl. 325.

The plaintiff's contention in the trial court was not that the notice of revocation and removal was unreasonable, but that since the relation of landlord and tenant existed between him and the town he was entitled to the statutory notice to quit. The court properly overruled this claim, and directed its finding upon the subject of notice exclusively to it. The claims of the plaintiff made it unnecessary to do otherwise.

There is no error.

In this opinion the other judges concurred.