JESSE THOMAS ET AL., RESPONDENTS, v. OCEAN CITY AUTOMOBILE BRIDGE COMPANY ET AL., APPELLANTS.

Submitted February 13, 1931—Decided October 19, 1931.

For the appellant Ocean City Automobile Bridge Company, *Robert K. Bell.*

For the appellant Hill Dredging Company, *Thompson & Hanstein.*

For the respondents, *Bourgeois & Coulomb.*

The opinion of the court was delivered by

DONGES, J. Defendant Ocean City Automobile Bridge Company appeals from judgments against it in favor of plaintiffs in eight separate suits and defendant Hill Dredging Company appeals from judgments against it, as well as the Bridge company, in favor of two of the plaintiffs. The cases were tried together.

These eight suits were begun by the lessees of certain clam and oyster grounds in Great Egg Harbor River, in Atlantic county, demised by the State of New Jersey, acting through the board of shell fisheries, for the period of one year beginning January 1st, 1927. These plaintiffs had been tenants of the same grounds for some years prior to 1927. During the year 1927, the bridge company acquired a sixty-feet wide strip of lands under water from the State of New Jersey, acting through the board of commerce and navigation, for the purpose of constructing a toll bridge across Great Egg Harbor river from Somers Point, in Atlantic county, to Beasley's Point, in Cape May county. The bridge company contracted with the defendant Hill company to make the fill. The work was done in 1927.

Plans and specifications called for a fill of the width of at least three hundred and forty feet, as follows: A sixty-feet strip coinciding with the riparian grant, to be bulkheaded on each side and filled to a point about six feet above ordinary high water; a forty-feet strip, likewise bulkheaded, and to be filled to about three feet above ordinary high tide, on each side of the sixty-feet wide strip granted by the state; and beyond the forty-feet strips a further fill one hundred feet wide on each side, with no bulkhead or other means of retaining it. There were two sections to be filled; one ex-

tending from the Atlantic county shore line southwesterly about seven hundred and thirty-five feet; the other extending from Drag channel southwesterly about one thousand two hundred and twenty feet to the main channel.

The suits were all brought against the bridge company and the dredging company upon two counts, one for negligence and the other for trespass.

The lands held by only two plaintiffs, Lloyd and Tallman, were actually traversed by the fill. The complaint was that the manner of doing the work under the contract, plans and specifications resulted in sand being distributed for great distances by the action of the tide, and of the dredges and other apparatus used, and spreading upon the lands of all of the plaintiffs upon which oysters and clams were planted, killing such oysters and clams. The trial resulted in verdicts in favor of all of the plaintiffs, as to Lloyd and Tallman against both defendants for trespass, and as to the six other plaintiffs against the bridge company only for negligence, a verdict having been entered in favor of the dredging company as to all plaintiffs excepting Lloyd and Tallman.

Several grounds for reversal are argued. The first and second grounds are that the trial judge should have nonsuited at the end of the plaintiffs' case and that he should have directed a verdict for defendants upon the whole case. The principal ground urged is that the bridge company by its grant had a superior right to the use of the land so granted to it, notwithstanding the prior grant to the plaintiffs Lloyd and Tallman. We are unable to agree with this contention. The leases to plaintiffs were made upon statutory authority (*Pamph. L.* 1917, *p.* 116; *Cum. Supp. Comp. Stat., p.* 585), and gave plaintiffs the exclusive privilege of planting and cultivating oysters and clams upon said lands. The subsequent grant of the riparian right to the bridge company could not and did not wipe out the rights of the plaintiffs-lessees to the use of the land. Such subsequent grant was subject to any prior rights acquired from the state. Both defendants were bound to know of such leases. The statute provides for the recording of such leases, so that all persons

have notice of the rights of lessees of such lands from the state. In addition to the constructive notice to defendants by the recording of the leases, it is in evidence that the defendants had actual knowledge of the use and occupation of the lands by the plaintiffs. In this situation, to construct a fill upon the lands of Lloyd and Tallman was a clear trespass. Counsel for both defendants admitted that the proof was that both defendants actually went on the lands of Tallman and Lloyd. Further, the fill was made many feet wider than any alleged grant warranted. As to the other plaintiffs, the proofs are clear that the manner of constructing the fill, and a failure to provide against the tides carrying sand loosened and put in motion by the acts of defendants resulted in injury and damage to such plaintiffs, for which plaintiffs are entitled to recover. *Paul* v. *Hazleton,* 37 *N. J. L.* 106; *Wooley* v. *Campbell, Ibid.* 163; *Grace* v. *Willets,* 50 *Id.* 414.

We think the motions to nonsuit and to direct verdicts in favor of defendants were properly denied.

The third ground for reversal is that the court erred in refusing to strike out testimony of the plaintiffs as to the quantity of oysters and clams plaintiffs had on the leased lands. In each instance complained of, the testimony came from witnesses who were familiar with the planting, development and gathering of shell fish. The weight of such testimony was for the jury. There may be doubt whether or not the motions to strike this testimony came too late. We think, however, the testimony was competent and that the motion to strike it out was properly denied.

Grounds four and five relate to requests to charge (a) that a verdict must be returned for the bridge company if it used diligence in selecting the Hill company to do the pumping, and that the sand going on plaintiffs' property was a direct result of the contract. The difficulty with this request is that the contract provided for the work to be done in such manner that it did damage to plaintiffs' property. The bridge company owed a duty to plaintiffs not to be a party to creating a nuisance. *Jenne* v. *Sutton,* 43 *N. J. L.*

257. In addition, this request, as framed, also would apply to Lloyd and Tallman and as to them it was clearly improper.

We think the court properly refused to charge (b) if the "roadway could have been filled in without permitting any sand to go on the property of plaintiffs," there should be a verdict for the bridge company. It is enough to say that the request, as framed, likewise applied to all plaintiffs, and it would clearly not apply to Tallman and Lloyd, whose lands by the terms of the contract were to be traversed by the fill.

The sixth ground for reversal is directed to the charge of the trial judge as follows: "In performing the work under the contract in this case, defendant was bound to know the effect of the currents of the river upon the sand pumped and agitated by the pumping machine." When a person undertakes work, he is obliged to know and anticipate those things that will reasonably result from his action. We see no error in the statement complained of.

The seventh ground is that the court charged: "The stakes marking the oyster and clam grounds at the time defendant commenced the pumping and agitating of sand in question were notice to defendant to some right in plaintiff in said land." We think this is so. The statute provides for marking the leased beds and such marking is notice to the public of some claim of right to such beds. In addition, it was in evidence that the person in charge for defendants saw the stakes and knew they marked oyster and clam lands. There was no error in this charge.

We have examined the other grounds for reversal urged by both of the defendants and find no merit in them. Upon the whole case, we conclude that the case was properly submitted to the jury both upon the liability of defendants and the amount of damages.

The judgments will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.