FREDERICK F. LOVEJOY *v.* TOWN OF DARIEN.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued October 3, 1944—decided January 18, 1945.

*Mark W. Norman,* with whom, on the brief, was *Frederick Miles,* for the appellant (defendant).

*John M. Comley,* for the appellee (plaintiff).

JENNINGS, J.   The defendant was authorized by statute to construct a sewer system.   It laid its outfall pipe through the plaintiff's oyster bed, destroying it and the oysters thereon.   The question to be decided is whether the trial court was justified in awarding damages to the plaintiff.

The finding, with such corrections as the evidence requires, may be summarized as follows for the purposes of this appeal.   The plaintiff is the owner of a franchise for the cultivation of oysters on approximately eight acres of land under the waters of Long Island Sound in the town of Darien.   His rights were originally granted to his predecessors in title by the oyster committee of the town of Darien under the provisions of § 2, Chapter 92, of the Public Acts of 1855, now General Statutes, § 3293.   The plaintiff purchased the ground in 1935 for $500.   It was regarded as the safest and best oyster ground in the town of Darien.

A special act (21 Spec. Laws 244) authorized the defendant to "construct, alter and repair, maintain and operate, sewage disposal plants, sewers or drains in, on or over any of the public lands, highways or elsewhere in the town of Darien."   In 1939, the defendant pursuant thereto contracted with an independent contractor for the construction of an outfall pipe through the plaintiff's oyster ground from its sewage disposal

plant on shore to a point in the Sound about sixteen hundred feet out from high-water mark. This pipe was laid in a trench from two to six feet in depth and six to eight feet in width. As a result of the excavation and backfilling, mud and other material were spread over the ground, and its usefulness as an oyster bed was destroyed, as were the oysters on the bed. The plaintiff removed four thousand bushels of oysters from the bed before the work started but two thousand two hundred bushels remained on the ground and, as has been stated above, were destroyed. These oysters were worth $1 per bushel. The defendant gave no formal notice to the plaintiff of its intention to do this work although he apprehended some months before it was done that the sewer outfall might cross his oyster bed.

The trial court concluded that the defendant did not have the legal right to destroy the plaintiff's oyster ground and the oysters thereon without making compensation and awarded damages to him of $3000 for the destruction of the franchise, $800 for the expense in removing four thousand bushels of oysters and $2200 as the value of the oysters left on the bed. The principal claim of the defendant was that the general public is the absolute owner of land under navigable waters to the extent that damage to an individual as a result of acts done by the sovereign with respect to submerged land is damnum absque injuria.

Certain rulings on evidence were assigned as error. They are not set up in accordance with approved practice. Each numbered paragraph contains numerous rulings and the evidence recited covers nearly twenty printed pages. Ordinarily each ruling assigned as error should be stated in a separate paragraph. *Rogoff* v. *Southern New England Contractors Supply Co., Inc.,* 129 Conn. 687, 689, 31 Atl. (2d) 29; Conn. App.

Proc., p. 117, note 17. As nearly as can be ascertained, there were four principal rulings claimed by the defendant to be erroneous. The plaintiff, as owner, testified to the value of his franchise based upon prices paid by him for other oyster grounds in the vicinity. Even without his long experience as an oyster grower, such evidence by an owner would be admissible. 20 Am. Jur. 751, § 892. The admission of evidence of the plaintiff's son as to the value of the bed was within the discretion of the trial court; *Wray* v. *Fairfield Amusement Co.*, 126 Conn. 221, 224, 10 Atl. (2d) 600; as was the ruling excluding testimony of a witness who had not worked on the ground for twenty-seven years. *Rosenstein* v. *Fair Haven & W. R. Co.*, 78 Conn. 29, 34, 60 Atl. 1061. The owner was asked the following question on cross-examination for the purpose of showing that at the time he purchased this property he was fully advised as to the rights of the town, state and United States to this oyster ground: "In estimating that value did you take into consideration any claim to use of the bed that the Town of Darien or the State of Connecticut or the United States Government might have?" The question was proper cross-examination to bring out the elements on which the witness's opinion of value was based. Its exclusion was harmless, however, in view of the conclusion reached that the claim asserted by the town was not good. The defendant takes nothing by these assignments of error.

The defendant has made a very thorough analysis of the authorities but the general purport of its brief is to invoke a similar rule to that which would apply had the federal government dredged through these beds to make a ship's channel essential for the navigation of the harbor. That of course is not the case. The town was authorized to build a sewage disposal

plant and elected to lay its outfall pipe through the plaintiff's oyster bed. It is difficult to see any difference between the destruction of the plaintiff's oyster bed, duly leased by him from the state, and the taking of a lot of land on shore for a sewer bed.

In the first place, when dealing with navigable waters the right of the state or United States, and particularly the latter, to maintain full rights of navigation is complete and any claims to private rights in the soil underlying navigable waters are subject thereto. *United States* v. *Chicago, M., St. P. & P. R. Co.*, 312 U.S. 592, 61 Sup. Ct. 772; *Lewis Blue Point Oyster Co.* v. *Briggs*, 198 N.Y. 287, 91 N.E. 846, aff'd, 229 U.S. 82, 33 Sup. Ct. 679; *Lane* v. *Harbor Commissioners*, 70 Conn. 685, 694, 40 Atl. 1058.

It is also an established principle in this state and by the weight of authority elsewhere that municipalities have the right to discharge sewage into tidal waters and any resulting injuries due to the dissipation of bacteria through the waters in their natural movement are damnum absque injuria. This was the point of *Lovejoy* v. *Norwalk*, 112 Conn. 199, 152 Atl. 210, which not only cited but reviewed many of the cases on the defendant's brief. The following quotation from this case (p. 211) well illustrates its limitations: "The facts do not establish any actual destruction of or injury to the plaintiff's oysters by the deposit upon them of sewage filth or sludge, or other visible and offensive conditions, but are confined to the existence in the waters flowing over them of bacteria. . . ." See *Old Dominion Land Co.* v. *Warwick County*, 172 Va. 160, 166, 200 S.E. 619; *Du Pont Rayon Co.* v. *Richmond Industries*, 85 Fed. (2d) 981. The doctrine is not universally accepted. *Foster* v. *Warblington Urban Council*, [1906] 1 K.B. 648, 665; *Owen* v. *Faversham Corporation*, 72 J.P. 404, aff'd, 73 J.P. 33; *Gib-*

*son* v. *Tampa*, 135 Fla. 637, 640, 185 So. 319; see also note, 3 A.L.R. 762.

The right of a riparian owner to wharf out is superior to that of the owner of an oyster bed. *Prior* v. *Swartz*, 62 Conn. 132, 138, 25 Atl. 398; *Lane* v. *Harbor Commissioners*, supra, 698. The rights of riparian owners are also expressly excepted by the statute from the rights granted to oyster growers. General Statutes, § 3303.

The case at bar involves none of these exceptions to the proposition that private property may not be taken for public use without compensation. Const. Conn. Art. I, § 11. No navigation rights are interfered with, there is no question of wharfing out, and the damage done was a physical taking and destruction of the bed as distinguished from discharging sewage into tidal waters. It follows that the cases supporting these propositions are not authority for the defendant's position.

It is unnecessary to decide whether a specific direction by the General Assembly to lay the sewer in this particular place would have protected the defendant under the doctrine that the state controls lands below high-water mark in the exercise of its police powers. *Illinois Central Railroad* v. *Illinois*, 146 U.S. 387, 459, 13 Sup. Ct. 110; *Pace* v. *State ex rel. Rice*, 191 Miss. 780, 804, 4 So. (2d) 270. No such mandate was given in this case. The defendant was not directed to lay this or any sewer. It was given certain powers in the Special Act referred to. It may be noted in passing that those powers were limited to the town of Darien. Darien was set off from Stamford in 1820 and is bounded southerly along the Sound. 2 Spec. Laws 1147. It is therefore doubtful whether it had any proprietary rights below high-water line. *Brower* v. *Wakeman*, 88 Conn. 8, 11, 89 Atl. 913; *Keister's*

*Appeal,* 89 Conn. 7, 12, 92 Atl. 744. Be that as it may, it had no direct sanction to invade the plaintiff's oyster beds, and, in the exercise of its right to lay a sewer, it was bound to use such means as would not unnecessarily or unreasonably injure them. In *Franklin Wharf* v. *Portland,* 67 Me. 46, the defendant was held liable for deposit of sewage destroying the value of wharf property; the court recognized the right of the city to drain sewage into the harbor but held that it must be exercised with due regard for the rights of the plaintiff. So *Haskell* v. *New Bedford,* 108 Mass. 208, 215; *Brayton* v. *Fall River,* 113 Mass. 218, 230; *Huffmire* v. *Brooklyn,* 162 N.Y. 584, 588, 57 N.E. 176; *Squaw Island F. T. Co.* v. *Buffalo,* 273 N.Y. 119, 128, 7 N.E. (2d) 10; see also *Thomas* v. *Ocean City Automobile Bridge Co.,* 108 N.J.L. 143, 156 Atl. 493; *Adams* v. *Carey,* 172 Md. 173, 183, 190 Atl. 815; *The Oyster Cases,* 94 Ct. Cl. (U.S.) 397, 416; *Winchell* v. *Waukesha,* 110 Wis. 101, 109, 85 N.W. 668. In this case there is no finding that it was reasonable or necessary to run the sewer through the plaintiff's oyster bed and the trial court was correct in concluding that the defendant must compensate the plaintiff for the damage done. *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531, 550, 45 Atl. 154.

The only possible question in relation to the damages awarded concerns the destruction of the twenty-two hundred bushels of oysters on the bed when the pipe was laid. The finding of the trial court that the plaintiff had no other grounds to which the oysters could be moved is not supported by the evidence. It is somewhat indefinite as to the precise knowledge the plaintiff had of the course of the outfall pipe. The defendant specifically claimed that the plaintiff had ample time to remove his oysters after notice. The judgment rendered showed that this claim was over-

ruled. It follows that the trial court must have concluded that the removal of four thousand of the sixty-two hundred bushels was a reasonable effort to minimize the damages. "The standard set as measuring the obligation of an injured party to minimize his damage is that of reasonable conduct." *Mazzotta* v. *Bornstein,* 104 *Conn.* 430, 446, 133 Atl. 677. The plaintiff was not obliged to do his utmost to that end. *Bridgeport* v. *Aetna Indemnity Co.,* 93 Conn. 277, 285, 105 Atl. 680. The award of damages will not be disturbed.

There is no error.

In this opinion the other judges concurred.