[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DEFENDANT'S TRIAL MEMORANDUM
Submitted by: Tamara Kagan Weiner of Kagan and Weiner Attorneys for the Defendants
I. FACTS:
Prior to August 11, 1988, the Plaintiff had furnished materials to the Defendant on two (2) job sites in Bloomfield, Connecticut. The Defendant paid for the materials within thirty (30) days of receipt of a bill, operating on an "open account" basis as testified to by the Vice President of the Plaintiff corporation, Brian Farrelly.
On or about August 11, 1988, the Defendant, acting by its Vice President, Louis P. Mignone, completed an application for credit received from the Plaintiff corporation. Said credit application provided for credit terms of thirty (30) days. Between August 12, 1988, and October 31, 1988, the Plaintiff delivered materials to the two (2) job sites in Bloomfield.
James R. DeVito, President of the Defendant corporation, CT Page 141 testified that Jack Farrelly began calling the Defendant commencing in late August of 1988, demanding payment for the materials delivered. Prior to that time, no such demand had been made, and in fact, the Defendant had paid the Plaintiff money for materials delivered prior to the date of the credit application agreement.
Because of Mr. Farrelly's continued harassment, Mr. DeVito testified that he notified the Plaintiff that he wished to return all of the materials delivered upon the job sites for full credit. He further testified that the Plaintiff refused to pick up the materials and refused to allow Mr. DeVito to deliver the materials to the Plaintiff's place of business. This testimony was not contradicted by the Defendant.
On January 5, 1989, the Plaintiff recorded a mechanic's lien in the amount of Fourteen Thousand Two Hundred Twenty and 77/100ths ($14,220.77) Dollars in Volume 441 at Page 212 of the Bloomfield Land Records. On February 1, 1989, the Defendant obtained an ex parte prejudgment remedy in the form of a garnishment against the Defendant in the amount of Eighteen Thousand ($18,000.00) Dollars. After numerous unsuccessful attempts to permit the Defendant to substitute a bond in lieu of the mechanic's lien, as allowed by Connecticut law, the Defendant applied to the court to dissolve the mechanic's lien by application dated June 30, 1989. Said application was granted after court appearance on July 10, 1989. A bond was issued by the Defendant, Covenant Mutual Insurance Company. The garnishment was not pursued.
This action was commenced by the Plaintiff on March 14, 1989. Covenant Mutual was added as a party after the bond was issued. The undersigned represents both named Defendants.
II. ISSUES:
A. WHETHER THE PLAINTIFF SUFFICIENTLY PROVED ITS DAMAGES.
B. WHETHER THE PLAINTIFF IS ENTITLED TO DAMAGES.
 1. WHETHER THE PLAINTIFF FAILED TO MITIGATE ITS DAMAGES.
2. WHETHER THE PLAINTIFF ACTED IN BAD FAITH.
 C. WHETHER THE PLAINTIFF IS ENTITLED TO ANY INTEREST IF DAMAGES ARE AWARDED.
 D. WHETHER THE PLAINTIFF IS ENTITLED TO ITS ATTORNEYS' FEES IF DAMAGES ARE AWARDED. CT Page 142
III. ARGUMENT:
A. THE PLAINTIFF FAILED TO SUFFICIENTLY PROVE ITS DAMAGES.
The Plaintiff attempted to prove its damages by an invoice dated November 30, 1988, Pl.'s Ex. B. Despite the fact that the credit application stated that purchase orders were required, the Plaintiff produced no purchase orders verifying that the materials were in fact delivered to the sites. The November 30, 1988 invoice simply listed other invoices without any reference to specific materials. This was not sufficient evidence to prove the damages claimed. See Willametz v. Goldfeld, 171 Conn. 622, 628,370 A.2d 1089, 1092 (1976).
B. THE PLAINTIFF IS NOT ENTITLED TO ANY DAMAGES.
1. THE PLAINTIFF FAILED TO MITIGATE ITS DAMAGES.
Although the testimony was uncontroverted that the Defendant demanded that the Plaintiff pick up the materials delivered to its job sites or in the alternative allow the Defendant to deliver the materials to the Plaintiff's place of business, the Plaintiff still maintains that it is entitled to damages based on its November 30, 1988 invoice, Plaintiff's Ex. A. The Plaintiff, testifying by its Vice President, Brian Farrelly, testified that all of the materials, except for the ductile piping, were returnable in the course of its normal business. He also testified that even with respect to the ductile piping, that he had on occasion allowed its return. Based on his testimony, the Plaintiff should have either picked up all of the materials pursuant to Mr. DeVito's instructions or permitted Mr. DeVito to deliver materials back to the Farrelly place of business.
This position is confirmed by Defendant's Ex. 1, which is a list of inventory to be returned to the Plaintiff which the parties were negotiating as part of a settlement. The handwritten words on the list regarding returnable material certainly constituted an admission that the Plaintiff customarily accepted return of various materials.
"The plaintiff clearly had a duty to exercise reasonable conduct to minimize the damages occasioned by the defendant's breach;", Willametz v. Goldfeld, supra, 171 Conn. at 627,370 A.2d 1089, 1092 (1976). In the Willametz case, the plaintiff sought damages based on its loss of use of its trucks for thirty-five (35) days after the defendant breached its contract with the plaintiff. The court only allowed two (2) days' worth of damages stating that the trucks were mobile, and when the work was delayed, the trucks could have easily been removed from the project site to be used elsewhere. Id. at 1091. In the case at bar, the Plaintiff could CT Page 143 have accepted the returned materials and sold them to another contractor. The Defendant should therefore not be responsible for the payment of the amounts set forth on Plaintiff's Ex. A.
Another analogous case is that of Lovejoy v. Town of Darien, 131 Conn. 533, 41 A.2d 98 (1945). The Lovejoy case involved the destruction of six thousand two hundred (6,200) bushels of the plaintiff's oysters by the defendant in the course of constructing a sewer system. The plaintiff sued for damages based on six thousand two hundred (6,200) bushels, but the court held that the plaintiff could have removed four thousand (4,000) of the six thousand two hundred (6,200) bushels. "`The standard set as measuring the obligation of an injured party to minimize his damage is that of reasonable conduct,'" Lovejoy at 540,41 A.2d at 101, citing Mazzotta v. Bornstein, 104 Conn. 430, 446, 133 A. 677,683.
Even if the items marked on Defendant's Ex. 1 as non-returnable by the Plaintiff were disallowed as part of the Defendant's customary policy, the total amount of such materials based on the Plaintiff's prices inserted on the inventory list total One Thousand Three Hundred Seventy-Five and 82/100ths ($1,375.82) Dollars. Thus, the Plaintiff in no event is entitled to its damages of over Fifteen Thousand ($15,000.00) Dollars.
2. THE PLAINTIFF ACTED IN BAD FAITH.
The testimony of Brian Farrelly and Jack Farrelly indicated that they treated the Defendant corporation differently than they treated their other customers. This constitutes an act of bad faith prohibited by both the Uniform Commercial Code which mandates behavior between contractors such as these parties, Conn. Gen. Stat. 42a-1-203, and 2 Restatement (Second) of Contracts 205 (1979).
B. THE PLAINTIFF IS NOT ENTITLED TO INTEREST.
In order for the Plaintiff to prevail in its claim of interest, the court must first award its damages and then find that justice requires interest to be paid to the Plaintiff. Southern New England Contracting Company v. State, 165 Conn. 644, 664,345 A.2d 550, 560 (1974). "The real question in each case is whether the detention of the money is or is not wrongful under the circumstances." Id. Because of the Plaintiff's failure to accept the return of the materials as set forth above, the Defendant's failure to pay the money was not wrongful, and therefore, interest should not be permitted. As in the Southern New England Contracting Company case, liability and damages were "hotly disputed, a factor which, while not decisive, can be considered. . ." Id. at 665, 345 A.2d at 560. CT Page 144
C. THE PLAINTIFF IS NOT ENTITLED TO ITS ATTORNEYS' FEES.
When a contract provides for attorneys' fees such as in the case at bar, the party seeking attorneys' fees must show "`what, if any, legal expenses plaintiff had necessarily incurred by reason of the defendants' failure to pay. . ."', Litton Industries Credit Corp. v. Catanuto, 175 Conn. 69, 76, 394 A.2d 191, 194
(1976), citing Fairfield Lease Corporation v. Marsi Dress Corporation, 60 Misc.2d 366, 303 N.Y.S.2d 182. Because of the fact that the Plaintiff could have accepted return of the materials, the Defendant should not have to pay Plaintiff's attorneys' fees in this case.
In addition, the fees charged were not proven at trial to be reasonable under the circumstances. Plaintiff's Exhibits C and D provide a breakdown of the fees. The bill dated February 27, 1989, consisted of almost three (3) hours for the Plaintiff's attorney to obtain twice the security required in this case by preparing a mechanic's lien, as well as a prejudgment remedy application. The July 7th bill consisted of four and one-half (4-1/2) hours of telephone conversations without any specificity to the substance of the conversations.
The bulk of the fee is found on the June 6, 1990 bill totalling Two Thousand One Hundred Thirty-Seven and 50/100ths ($2,137.50) Dollars. This bill is based on fourteen and one-quarter (14.25) hours of work on a trial which did not have to take place but for the Plaintiff's unreasonable conduct.
The attorneys' fees should therefore be disallowed.
IV. CONCLUSION:
The Plaintiff failed to prove its damages since it did not offer sufficient evidence to substantiate them. As the Defendant and the Plaintiff are tendering these memoranda simultaneously, the Defendant still does not know the exact amount of damages the Plaintiff is claiming. The evidence consisted of an invoice showing a total of Fifteen Thousand Three Hundred Fifty-Three and 69/100ths ($15,353.69) Dollars; the mechanic's lien was placed on the land records for Fourteen Thousand Twenty-Seven and 27/100ths ($14,027.27) Dollars; the garnishment totalled Eighteen Thousand ($18,000.00) Dollars. There was no definitive damage amount proven.
The Plaintiff did nothing to mitigate its damages. It could have resold almost all, if not all, of the materials delivered to the Defendant. Instead, it unreasonably chose to leave the materials with the Defendant, and sue under its credit CT Page 145 application. This conduct barred the Plaintiff from collecting damages from the Defendant.
Since the award of interest should only be made upon a finding of wrongful detention of money, the Plaintiff is not entitled to interest.
This lawsuit was unnecessary, and, therefore, no attorneys' fees should be awarded.
Respectfully submitted, DEFENDANTS, By Tamara Kagar Weiner of Kagan and Weiner Their Attorneys
CERTIFICATION
This is to certify that a copy of the foregoing was mailed postage prepaid this 21st day of June, 1990, to Jay B. Weintraub, Esquire, Beizer Weintraub, 345 North Main Street, West Hartford, CT 06117; and The Honorable Mary Hennessy, 95 Washington Street, Hartford, CT 06106.
Tamara Kagan Weiner Commissioner of the Superior Court