******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NOLA MCLAUGHLIN *v*. FRANCIS W. MCLAUGHLIN
## (AC 47254)

Cradle, C. J., and Alvord and Seeley, Js.

*Syllabus*

The defendant appealed from the trial court's judgment dissolving his marriage to the plaintiff and granting certain other relief. The defendant claimed, inter alia, that the court's valuation of the marital residence was clearly erroneous because the court improperly admitted into evidence and relied on the plaintiff's testimony as to its value. *Held*:

The trial court's factual finding as to the value of the parties' marital residence was not clearly erroneous, as that court did not abuse its discretion in admitting into evidence the plaintiff's valuation testimony because the plaintiff's equitable interest in the marital residence, in conjunction with her thirty-two years of living in and becoming familiar with the home, established that she possessed a sufficient ownership interest in the marital residence for purposes of testifying as to its value, and the record contained other evidence on which the court reasonably could have based its valuation.

This court declined to review the defendant's claim that the trial court failed to award the defendant alimony pursuant to the parties' premarital agreement, as the defendant failed to raise that claim before the trial court, and, therefore, the claim was not properly before this court.

Argued October 6, 2025—officially released January 27, 2026

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the defendant filed a notice seeking enforcement of a premarital agreement; thereafter, the case was tried to the court, *Allard*, *J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court. *Affirmed*.

*Tara C. Dugo*, for the appellant (defendant).

*Brandon B. Fontaine*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Francis W. McLaughlin, appeals from the judgment of the trial court dissolving

his marriage to the plaintiff, Nola McLaughlin. On appeal, the defendant claims that the trial court (1) erroneously valued the marital residence by improperly admitting into evidence and relying on the plaintiff's testimony as to its value and (2) failed to award him alimony pursuant to the parties' premarital agreement. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the present appeal. The parties began dating on February 1, 1990, became engaged two weeks later, and started living together that same month in a house purchased by the defendant and located at 64 Lido Road in Unionville (marital residence). On July 29, 1992, the parties executed a premarital agreement prepared by the defendant's attorney. The premarital agreement provides in relevant part: "Both parties agree that [the defendant] is entitled to $65,000.00 he originally invested in the single-family home known as and located at 64 Lido Road, Unionville, CT 06085, after the payment of the mortgage on the premises and the remainder of the equity presently in existence and all future equity in that house shall be shared equally . . . ."[1] The parties married on September 12, 1992, and are the parents of two children, neither of whom were minors at the time of the dissolution proceedings.

In February, 2022, the plaintiff commenced the present dissolution action. On July 18, 2022, the defendant filed a notice seeking enforcement of the premarital agreement. In response, on November 1, 2022, the plaintiff filed a memorandum of law arguing that the premarital agreement is unenforceable "on the basis that [it] was not validly executed due to a lack of full disclosure and lack of reasonable opportunity to obtain independent counsel." Alternatively, she argued that "enforcement would be unjust based on public policy or unforeseen

---

[1] The premarital agreement further provides that "[e]ach party to this agreement agrees to share in all joint gifts, earnings and all acquired assets after the marriage and to provide for each other in all such property either as a result of death or dissolution of their future marriage . . . ."

circumstances." The court held a hearing concerning the enforceability of the premarital agreement on November 3, 2022, at which both parties testified. On January 6, 2023, the court, *Allard, J.*, issued an order reserving "determination of the enforcement of the 1992 prenuptial agreement until the time of trial." The case was then tried before the court over several dates in 2023.

During trial, the defendant testified that the value of the marital residence was $355,000.[2] This value differed from the $405,900 listed as the coverage limit for the dwelling on the home insurance policy. The defendant explained that he used $405,900 for purposes of insurance coverage because "[his] agent advised it—cost of materials is so high now, [if] the house had to be replaced the materials would cost so much more nowadays." The defendant also noted that the home required repairs, including upgrading the central air conditioning, replacing the furnace,[3] and rebuilding the deck, but his response was equivocal when asked by his counsel if these repairs were included in his valuation of the marital residence or if his valuation reflected the home's "as-is condition."[4]

The plaintiff also was asked to opine on the value of the marital residence. The defendant's counsel objected

---

[2]The plaintiff introduced into evidence two financial affidavits completed by the defendant. The affidavit the defendant signed in September, 2022, listed $355,000 as the value of the marital residence. The affidavit he signed in February, 2023, however, listed $365,000 as the value of the marital residence. When questioned by the plaintiff's counsel, the defendant stated the value listed on the February affidavit as $355,000 but noted, relative to the disparity, that he has "bad eyes" and conceded "[w]hatever is there, is there" when the plaintiff's counsel followed up with, "[i]f I represented to you that [plaintiff's exhibit 7] says $365,000, would you have any reason to doubt me?"

[3]The defendant estimated that the costs to upgrade the central air conditioning and to replace the furnace would be $7900 and $6900, respectively. He further estimated that rebuilding the deck would cost between $12,000 and $15,000.

[4]We note the following colloquies regarding the defendant's consideration of the future contemplated repairs to the home in his valuation:

"[The Defendant's Counsel]: On your financial affidavit you valued the house at $355,000. Do you believe that is in as-i[s] condition without [the central air conditioning and furnace] repairs being done?

on the basis that the plaintiff was not an expert; nor did she have title to the home. The plaintiff's counsel responded that the plaintiff "has an equitable claim in the property regardless of how it's titled. And . . . a person with an equitable or direct claim in a property can testify as to its value without being an expert witness." The court overruled the evidentiary objection and allowed the plaintiff to testify regarding her opinion as to the value of the marital residence. The plaintiff based her valuation on the size and interior layout of the home, the renovations that had been made, including construction of an additional garage for the defendant's cars, and the home's location in "a prestigious town . . . ." The plaintiff stated that the value of the marital residence was "at least $400,000."

On October 23, 2023, the court issued its memorandum of decision, in which it concluded that the premarital agreement was valid and enforceable and ordered, inter alia, that the marriage be dissolved, that no alimony be awarded to either party, and that the defendant pay the plaintiff, pursuant to the premarital agreement,

"[The Defendant]: I don't know. I'm not a real estate agent.

"[The Defendant's Counsel]: Okay. But what—when you put a value of 355—

"[The Defendant]: Um-hm.

"[The Defendant's Counsel]: —did you say that but a buyer would have to put $15,000 worth of work—

"[The Defendant]: Correct.

"[The Defendant's Counsel]: —into it?

"[The Defendant]: Yes.

"[The Defendant's Counsel]: Okay. So, you valued it in as-is condition?

"[The Defendant]: No."

* * *

"The Court: So, valued as what?

"[The Defendant's Counsel]: As though this work had been done, it—that it had a new air conditioner and—

"[The Defendant]: Correct."

Thereafter, the following additional colloquy occurred:

"[The Defendant's Counsel]: Does [your valuation of the home] include the redoing of the deck?

"[The Defendant]: Does my value?

"[The Defendant's Counsel]: Yes.

"[The Defendant]: No."

her share of the home's equity. In issuing its order, the court found that the value of the marital residence was $400,000 and, pursuant to the premarital agreement, credited to the defendant his $65,000 premarital investment in the home and divided the remaining balance equally to quantify the plaintiff's share at $167,500. This appeal from the dissolution judgment, challenging the court's valuation of the marital residence and decision not to award alimony to the defendant, followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court's valuation of the marital residence was clearly erroneous because the court improperly admitted into evidence and relied on the plaintiff's testimony as to its value. The defendant asserts that the court abused its discretion in admitting the plaintiff's testimony because she did not hold title to the marital residence and, for that reason, was not qualified to opine on the property's fair market value. The plaintiff responds that her testimony was admissible because she "had sufficient ownership interest in the marital home . . . ." We agree with the plaintiff.

The following standard of review and legal principles are relevant to our consideration of this issue. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Martin* v. *Olson*, 226 Conn. App. 392, 405, 318 A.3d 1067, cert. denied, 350 Conn. 902, 322 A.3d 1059 (2024). Moreover, "[a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [*w*]*e do not examine the record to determine whether the* [*court*] *could have reached a conclusion other than the one reached. . . . *Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Emphasis in original; internal quotation marks omitted.) *Kirwan* v. *Kirwan*, 185 Conn. App. 713, 736, 197 A.3d 1000 (2018).

Our Supreme Court has held that a party, although having no qualification other than an ownership interest in real property, is competent to testify as to the value of that real property. See, e.g., *Wahba* v. *JPMorgan Chase Bank, N.A.*, 349 Conn. 483, 510–11, 316 A.3d 338 (2024); *Lovejoy* v. *Darien,* 131 Conn. 533, 536, 41 A.2d 98 (1945). In applying this exception to the general rule that lay witnesses may not provide expert opinions, our courts have considered the owner's familiarity with the property to establish a basis for his or her opinion as to its value. See *Misisco* v. *La Maita*, 150 Conn. 680, 685, 192 A.2d 891 (1963).

The defendant's position is that the law in Connecticut provides that "a spouse who does not hold title to real property cannot testify as to its value." (Emphasis omitted). He relies on *Porter* v. *Thrane*, 98 Conn. App. 336, 908 A.2d 1137 (2006), to support his contention that such a rule exists. *Porter*, however, cannot be read for that proposition. Our case law does not support the requirement that a witness hold title to property to be deemed competent to testify to its value. Rather, as set forth in *Porter*, courts routinely examine the facts and circumstances surrounding the witness' familiarity with the property to assess the admissibility of such opinion evidence. See id., 341–42. In fact, the court in *Porter* illustrated circumstances in which nonowners were permitted to testify as to a property's value. Id., 341 n.5. For instance, in *O'Connor* v. *Dory Corp.*, 174 Conn. 65,

70, 381 A.2d 559 (1977), the former owner of property was permitted to testify as to its value where reasonable qualifications were established. In addition, in *Lovejoy* v. *Darien*, supra, 131 Conn. 536, our Supreme Court held that "[t]he admission of evidence of the [owner's] son as to the value of the [oyster] bed was within the discretion of the trial court . . . as was the ruling excluding testimony of a witness who had not worked on the ground for twenty-seven years." (Citation omitted.)

We also note that our Supreme Court's decision in *Misisco* v. *La Maita*, supra, 150 Conn. 685, presented such a situation, as that court determined that it was not erroneous for the trial court to allow the nonowner plaintiff to opine on the property's value because he "had occupied the property for at least five years and had the opportunity of becoming acquainted with its value . . . ." The commentary to § 7-1 of the Connecticut Code of Evidence references *Misisco* as an exception to the rule that lay witnesses cannot provide expert opinions.[5] Our law, thus, contemplates that a witness need not be a titleholder of the property to testify to its value when that witness had sufficient opportunity to become acquainted with the property. Therefore, we decline to accept the defendant's proposition that Connecticut law establishes that an occupant of a marital residence who

[5] As noted in the commentary to § 1-1 (b) of the Connecticut Code of Evidence, "[w]hen the Code was initially adopted by the judges of the Superior Court in 1999 and then readopted by the Supreme Court in 2014, the adoption included both the rules and the commentary, thereby making both equally applicable." Conn. Code Evid. § 1-1 (b), commentary. Our Supreme Court has recognized that "the [c]ode cannot be properly understood without reference to the accompanying [c]ommentary. The [c]ommentary provides the necessary context for the text of the [c]ode, and the text of the [c]ode expresses in general terms the rules of evidence that the cases cited in the [c]ommentary have established." (Internal quotation marks omitted.) *State* v. *Pierre*, 277 Conn. 42, 60, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006); see also E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) §§ 1.7.1 and 1.7.2, pp. 32–33 ("[t]he cases cited [in the commentary] are those that the [code] drafters believe accurately state the proposition embodied in the rule [of evidence]," and the commentary "can be cited as 'authoritative' ").

does not additionally hold title to the property cannot offer such opinion evidence.

The facts of this case compel us to uphold the trial court's ruling that the plaintiff was competent to express an opinion regarding the value of the marital residence where she had lived for thirty-two years prior to moving out in March, 2022, one month after filing this dissolution action. In her thirty-two years of living at the home, the plaintiff had ample opportunity and time to become acquainted with the property. She provided a detailed explanation for why she believed the value of the marital residence to be $400,000, including the improvements that had been made to it, the size and description of the interior, and the "prestigious town" in which it was located. Additionally, the defendant did not present any evidence of substantial changes to or deterioration of the home that occurred since the plaintiff moved out that would have altered her familiarity with the property and, thus, its value. On cross-examination, the defendant could have questioned the plaintiff's understanding of the repairs and renovations that he noted in his testimony or the number of bedrooms within the home to challenge the basis for her valuation, but he failed to do so. See *Misisco* v. *La Maita*, supra, 150 Conn. 685 ("The defendant had the opportunity of testing the plaintiff's knowledge of the value on cross-examination. The weight to be given the testimony was for the trier to decide.").

Additionally, the parties executed a premarital agreement prepared by the defendant's attorney that gave the plaintiff a financial interest in the marital residence. Specifically, the premarital agreement provided in relevant part: "It is further agreed and understood between the parties that upon the marriage to each other as follows . . . Both parties agree that [the defendant] is entitled to $65,000.00 he originally invested in the single-family home known as and located at 64 Lido Road, Unionville, CT 06085, after the payment of the mortgage on the premises and the remainder of the equity presently in existence and all future equity in that house shall be

shared equally . . . ." Upon marriage to the defendant, the premarital agreement expressly entitled the plaintiff to an equal share of the marital residence's present and future equity, less the initial $65,000 the defendant invested. Although the plaintiff is not a titleholder of the property, under the terms of the parties' premarital agreement, she possessed a financial interest similar to that of a property owner for more than thirty years. Her contractual right to the property's equity, in conjunction with her thirty-two years of living in and becoming familiar with the home, established that the plaintiff possessed sufficient ownership interest in the marital residence for purposes of testifying as to its value. We, therefore, conclude that the court did not abuse its discretion in admitting the plaintiff's testimony.

Finally, we note that the record contains other evidence on which the trial court reasonably could have based its valuation. Specifically, the plaintiff presented evidence of the insurance policy for the marital residence, which assigned coverage for the dwelling and the other structures on the property at $405,900 and $40,600, respectively. Because the trial court's finding is supported by the evidence and we are not left with any firm conviction that a mistake was made, we conclude that it was not clearly erroneous. See *Kirwan* v. *Kirwan,* supra, 185 Conn. App. 738.

II

The defendant next claims that the court's order failed to "compl[y] with the clear terms of the parties' [premarital] agreement . . . that the parties were to share in each other's earnings in the event of a dissolution of marriage." The plaintiff responds that the defendant "did not preserve this issue by raising it in the trial court." She asserts that, "at trial, the parties treated property as falling under the agreement, while alimony from future income and earnings was treated separately under the usual statutory considerations." In his reply brief, the defendant contends that this court should disregard the plaintiff's contention because "the defendant has

maintained throughout the litigation that the parties' incomes should be shared as part of the court's orders." We are not persuaded.

"It is well known that this court is not bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. Practice Book § 60-5. The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Emphasis in original; internal quotation marks omitted.) *Ochoa* v. *Behling*, 221 Conn. App. 45, 50–51, 299 A.3d 1275 (2023); see also *Gainty* v. *Infantino*, 222 Conn. App. 785, 802, 306 A.3d 1171 (2023) (declining to review claims of error with respect to trial court's order requiring defendant to reimburse plaintiff for educational expenses where defendant did not raise claims with trial court), cert. denied, 348 Conn. 948, 308 A.3d 36 (2024); *Kennynick, LLC* v. *Standard Petroleum Co.*, 222 Conn. App. 234, 235 n.2, 305 A.3d 632 (2023) (declining to review claim of error with respect to compound prejudgment interest where defendant did not raise claim with trial court despite plaintiff expressly requesting that award in posttrial briefing).

On appeal, the defendant asserts that the terms of the premarital agreement require "that [the parties'] earnings be shared, whether it be in the form of alimony or otherwise" in the event of a dissolution of the marriage. Although the defendant maintained his request for alimony throughout the trial, the record does not reflect his contention on appeal that the premarital agreement serves as the legal basis for an award of alimony. Rather, our thorough review of the record, including the defen-

dant's amended proposed orders,[6] closing argument,[7] and motion for reargument,[8] reveals that he sought an alimony award based on the factors contained in General Statutes § 46b-82 and not on the provisions of the premarital agreement. Because the defendant did not raise this claim with the trial court, it is not properly before this court, and we therefore decline to review it.

The judgment is affirmed.

In this opinion the other judges concurred.

--------

[6] In his amended proposed orders, the defendant detached his request for alimony from his proposed division of assets under the premarital agreement. Specifically, the proposed orders contained, inter alia, one section titled "Alimony" and two sections titled, respectively, "Enforceability of the Prenuptial Agreement" and "Division of Assets." The latter two sections discussed the division of marital assets under the premarital agreement and did not make any reference to a division of future earnings or alimony. The absence of these terms and the placement of a proposal of alimony into a separate section indicate that the defendant did not consider an award of alimony to fall within the parameters of the premarital agreement.

[7] General Statutes § 46b-82 (a) provides in relevant part that, in awarding alimony, the court must consider, inter alia, the age, health, amount and sources of income and earning capacity of the party requesting spousal support. During closing argument, the defendant's counsel argued for an award of alimony by applying these factors, stating, "[w]ith regard to alimony currently, our case law is basically pretty clear on the reasons for alimony. . . . We have an age difference of these parties, we have a health difference in these parties. We have [the plaintiff's] ability to continue to earn at the top of her game $90,000 a year and [the defendant] in a situation where he's not going to earn any money. He's limited by Social Security, number one, and number two, he's limited by his skills and his health. There should be no reason why he doesn't receive some type of spousal support to maintain him in the same lifestyle he was accustomed to during the marriage."

[8] In his motion for reargument, the defendant asserted that, "[h]ad the court considered the statutory factors set out in [General Statutes §] 46b-82, it would have found that despite the gender of the recipient, this is an alimony case."