IN THE MATTER OF THE APPLICATION OF THE OYSTER-GROUND COMMITTEE OF THE TOWN OF CLINTON.

The act of 1881 (Session Laws of 1881, p. 104, sec. 12,) provides that the Superior Court, on the application of the oyster-ground committee of any town in the county, shall appoint a committee of three persons to ascertain and locate all the natural oyster-beds within the limits of the town, who shall give notice of their meeting, hear the parties who appear before them, and take evidence from other sources in their discretion, and make report to the court, which report, when accepted by the court and recorded in its records, shall be a final and conclusive determination of the location and extent of such natural beds. A committee so appointed made its report and the court rejected it, and the appellants appealed to this court. Held, on a motion to strike the appeal from the docket, that the rejection of the report was to be regarded as a final judgment, and that the court would entertain the appeal.

The court had power to set aside the report if the committee had exceeded its jurisdiction or had conducted its proceedings in an unfair or improper manner. The power to accept the report by implication gives the power to reject it.

The committee is not authorized under the act to designate, as natural oyster-beds, oyster grounds that had previously been designated to individuals under the provisions of previous statutes.

Any person whose claim to the ownership of oyster grounds would be affected by the report of such a committee, would have the right to appear and remonstrate against the acceptance of the report.

It is not necessary that the committee should designate natural oyster, clam and mussel beds separately.

[Argued March 4th—decided June 30th, 1884.]

APPLICATION of the oyster-ground committee of the town of Clinton, to the Superior Court in Middlesex County, for the appointment of a committee under the statute of 1881 to designate the oyster, clam and mussel beds within

the limits of the town. Committee appointed; report made to the court; remonstrances by sundry parties interested; report set aside; and appeal to this court by the applicants. The case is sufficiently stated in the opinion.

*D. Chadwick* and *W. F. Willcox*, for the appellants.

*L. Harrison* and *J. W. Alling*, for the appellees.

CARPENTER, J. This case is an application under the statute of 1881 for a committee to ascertain the natural oyster, clam and mussel beds in the waters of the town of Clinton. A majority of the committee, after hearing the parties interested, found and designated substantially the whole harbor of Clinton as a natural oyster, &c., bed. Several persons who had oyster grounds set out to them in severalty prior to the passage of the act, and who had acquired valuable interests therein, and whose interests might be seriously affected if the report of the committee should be accepted, appeared and remonstrated against its acceptance. The court heard the several remonstrances and rendered judgment, rejecting the report of the committee, and referring the case to another committee. The applicants appealed.

A preliminary question arises on a motion to erase the appeal from the docket for want of jurisdiction. In ordinary cases the rejection of the report of a committee is not a final judgment from which an appeal lies. This case however is exceptional. No judgment is to be rendered on the report. When accepted, the report itself becomes practically the final judgment. If rejected, there is no judgment, such as the proceedings contemplate, and the case goes to another committee. The judgment of the court on the remonstrance refusing to accept the report, is in the nature of a final judgment. It deprives the party of a report to which he may be entitled. If he is, it is better for all concerned that it should be determined before the expense is incurred of a trial before another committee. In

that aspect of the case, and considering the peculiar character of the proceeding, it was deemed best to hear it on its merits, and, having heard it, we will dispose of the questions presented.

The reasons of appeal are as follows:

"1. Because said Hurd and the other remonstrants had no legal right to appear as a party or otherwise to oppose the acceptance of the report.

"2. That the committee making the report being created by authority of a public statute to survey and describe property belonging to the state, their report and doings are not subject to review and adjudication by the court, and especially in any manner mentioned or indicated in the remonstrance.

"3. That the court erred in overruling the demurrers contained in the replications to paragraphs two, three, four, six, eight, nine, ten, eleven, twelve and thirteen, in the remonstrance, for the reason that those paragraphs do not contain matter sufficient in law to constitute a cause of remonstrance.

"4. That the committee were not guilty of improper or irregular conduct in holding a public meeting September 15th, 1882; that the statute under which they acted gave them authority to hold such meeting.

"5. That the report is not defective in not designating severally, by areas, bounds and ranges, the natural oyster, clam, and mussel beds within the waters of Clinton."

The real question underlying the first three reasons may be stated thus:—Does the statute under which the proceeding is had give the committee jurisdiction over any natural oyster, clam and mussel beds which may be included in any grounds previously designated to individuals? The answer to this question will dispose of all the legal questions involved in those reasons. In respect to the first two, the counsel for the appellants encounter this dilemma. If the committee have jurisdiction over private grounds, then, inasmuch as their report concludes all parties, the private property of individuals, or that which they claim as their

property, may be taken from them without giving them an opportunity to be heard before the courts, if the claim that they have no right to remonstrate is sound. Such a principle would be unconstitutional and contrary to natural right. We cannot impute such an intention to the legislature by construction. If, on the other hand, they have no such jurisdiction, then their act in assuming jurisdiction is unauthorized, and their report is necessarily illegal. Inasmuch as the report creates a doubt as to the title to private property, we think it quite clear that any person whose title is thus affected may appear and remonstrate.

It is not seriously urged by the appellants that the Superior Court has no power to set aside the report, provided sufficient reasons exist. We entertain no doubt that it is the duty of the court to do so, when it appears that the committee have exceeded their jurisdiction, or that they have conducted their proceedings in an unfair or improper manner to the prejudice of individual rights. The power to accept by implication gives the power to reject for sufficient cause.

The third reason of appeal raises the question whether the facts set up in the enumerated paragraphs are sufficient to justify the rejection of the report. Those facts in substance are that the committee included in grounds found by them to be natural oyster beds, grounds which had been previously designated under then existing laws to the remonstrants; and the controlling question in the case is, whether the committee had jurisdiction over such private grounds. The statute requires the committee "to ascertain, locate, and describe by proper boundaries, all the natural oyster, clam or mussel beds within the boundaries of such town. Said committee so appointed shall first give three weeks' notice, by advertising in a newspaper published in or nearest to said town, of the time and place of their first meeting for such purpose, they shall hear parties who appear before them, and may take evidence from such other sources as they may in their discretion deem proper, and they shall make written designations by ranges, bounds and areas, of

all the natural oyster, clam and mussel beds within the boundaries of the town they are appointed for, and shall make a report of their doings to the Superior Court; and such report, when made to and accepted by said court, and recorded in the records thereof, shall be a final and conclusive determination of the extent, boundaries and location of such natural beds at the date of such report."

It may be admitted that the language of this statute, taken by itself, is broad enough to justify the claim of the appellants, that *all* the natural beds are to be ascertained and located; but in construing a statute of this kind we are to have regard to pre-existing statutes relating to the same subject matter, especially where individuals have acquired important interests under such statutes.

For nearly forty years it had been the policy of the state to encourage the cultivation of oysters. Under that policy a very large industry had been developed, and the wealth of the state had materially increased. Individuals had been permitted and encouraged to acquire private property to a large amount in certain designated areas for raising oysters. A considerable portion of the waters of the state had been designated and set apart for that purpose. But there had always been an express provision in the statute that no natural oyster beds should be so designated. Thus the law has always been careful to protect and preserve to the public the right to take oysters in natural oyster beds, and it was in furtherance of that same design that the law of 1881 was passed, requiring the natural oyster beds to be so defined that the oyster ground committee and all others might know where they were, and that they might not be designated to individuals. Thus, at the time of the passage of the act, the waters of the state were divided into two parts—those that were set apart for private use and those that were not. Theoretically the latter contained all the natural oyster beds; the former were not supposed to contain any, or, if any, comparatively few. The law, like most laws, had been generally observed; at least we see nothing to indicate that the legislature supposed that it had been generally disre-

garded. Grant that there were instances in which the law had been violated. Still, the rights of the public were reasonably protected. Any one prosecuted for taking oysters from grounds so designated might show in defense that they were a natural oyster bed. *Averill* v. *Hull*, 37 Conn., 320. And in 1870 a specific remedy was given by statute in such cases, which is still in force. Thus the law stood when the act in question was passed. We must assume that members of the legislature were familiar with the operation and results of those laws, and that they knew that large sums of money had been invested in consequence thereof, that large interests had been acquired, and that large industries had grown up dependent entirely upon the good faith of the state and the integrity of its laws. Now to suppose that the legislature intended to put those interests in jeopardy by placing them at the mercy of an irresponsible committee, a committee relieved in a great measure from the observance of those rules and regulations which govern the admission of testimony in all judicial tribunals, a committee liable to be influenced by local jealousies and prejudices, is little less than preposterous.

We must therefore hold that the act of 1881, notwithstanding the general language in which it is framed, does not apply to oyster grounds previously designated. It follows that the facts set up in the remonstrance are sufficient. The committee exceeded their jurisdiction. They invaded private property and assumed to settle disputed rights and titles, which the law did not authorize.

We have said enough to dispose of the case. We will however briefly notice the other reasons of appeal.

The committee held a meeting and received testimony, after the hearing had been formally closed, without giving notice other than a written notice posted on the public sign post. We think that was a sufficient notice so long as the committee kept within their jurisdiction. But if they had had jurisdiction, as they assumed to have, over grounds previously designated to individuals, we are of the opinion that individuals to be affected by their proceedings would

have been entitled to specific notice. From their stand point this proceeding was irregular.

The committee did not designate severally the oyster, clam and mussel beds. This the statute, as we interpret it, does not require. If however it was to be interpreted as claimed it might require it in certain cases. The law did not at all times prohibit the designation of clam and mussel beds, while it did prohibit the designation of oyster beds. In proceedings affecting some designations therefore it might have been necessary to distinguish oyster beds from others. But the view we take of the law renders these questions unimportant.

There is no error.

In this opinion the other judges concurred.