ENIA DOUGLAS-MELLERS ET AL. *v.* WINDSOR
INSURANCE COMPANY
(AC 22478)

Lavery, C. J., and Mihalakos and Dranginis, Js.

Considered January 16—officially released March 26, 2002

*Andrew H. Sharp*, in support of the motion.

*James O. Gaston*, in opposition.

### Opinion

DRANGINIS, J. The plaintiffs appeal from the trial court's order sustaining the defendant's objection to the acceptance of the attorney trial referee's report and revoking the reference to the referee. The defendant has filed a motion to dismiss the appeal on the ground that the order is not an appealable final judgment. We agree that the appeal is premature and grant the defendant's motion to dismiss.

On April 6, 1998, the plaintiffs, Enia Douglas-Mellers, Cynthia Reynolds and Sasha Hart, were involved in an

automobile accident while driving in a vehicle insured by the defendant, Windsor Insurance Company. The plaintiffs brought this action against the defendant seeking damages under the uninsured motorist provisions of the insurance policy. The court referred the matter to an attorney trial referee, Dominick J. Rutigliano, who tried the case on June 22 and July 23, 2001. On August 8, 2001, the attorney trial referee filed a report with the court, along with a recommendation of an award of damages for the plaintiffs. The defendant filed an objection to the acceptance of the report on August 24, 2001.[1] On September 5, 2001, the court sustained the defendant's objection, revoked the reference to the attorney trial referee and ordered the matter to be placed on the court trial list. The plaintiffs subsequently filed motions for articulation and for reargument, which the court granted. On October 22, 2001, after reargument, the court sustained its previous ruling on the defendant's objection to the report.

On November 9, 2001, the plaintiffs filed an appeal from the court's order rejecting the attorney trial referee's report and revoking the reference to the referee. The defendant subsequently filed a motion to dismiss the appeal for lack of a final judgment. The sole issue now before us is whether an order of the trial court revoking the reference to an attorney trial referee and leaving the case to be disposed of in the trial court can be immediately appealed.

As a preliminary matter, we must first examine the procedures that govern matters heard by attorney trial referees as set forth in chapter nineteen of our rules of practice. Upon the consent of the appearing parties, the court may refer a nonjury case to an attorney trial

---

[1] The defendant objected to the report on the ground that it was not based on the evidence introduced at trial.

referee for a trial.[2] Practice Book § 19-2A. Within 120 days after the completion of the trial, the attorney trial referee must file a report with the court, stating "the facts found and the conclusions drawn therefrom"; Practice Book § 19-8 (a); and the report may be supplemented with "a memorandum of decision including such matters as [the attorney trial referee] may deem helpful in the decision of the case . . . ." Practice Book § 19-8 (b); see *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 503, 508 A.2d 415 (1986). A party may then file an objection to the court's acceptance of the report. Practice Book § 19-14. Under Practice Book § 19-17, the court has the authority to render judgment on the report or, if the court finds error, it must reject the report and refer the matter to the same or another attorney trial referee for a new trial or revoke the reference and leave the case to be disposed of in the trial court.

The plaintiffs in the present case cite *In re Application of Clinton Oyster Ground Committee*, 52 Conn. 5 (1884), for the proposition that the revocation of the reference to the attorney trial referee is an appealable final judgment. In that case, the oyster ground committee of the town of Clinton, pursuant to statute, filed an application in the court for the appointment of an independent committee to ascertain and describe the boundaries of the natural oyster, clam and mussel beds in the waters of the town.[3] The appointed committee

---

[2] "Once the parties consent to the use of an attorney trial referee, however, it is implicit that the parties must then submit to the entire process set forth in [Practice Book §§ 19-1 through 19-18]. A party cannot later opt out of the process should the attorney trial referee's report prove to be unfavorable. Only the trial court can abort the process by revoking the referral to the attorney trial referee." *OCI Mortgage Corp.* v. *Marchese*, 48 Conn. App. 750, 753, 712 A.2d 449 (1998).

[3] The process was governed by Public Acts 1881, c. 140, § 12, p. 104, codified as § 2326 of the General Statutes of 1888, which provides in relevant part: "The Superior Court of New Haven County, on the application of the selectmen of the town of Orange, and the Superior Court of any county, on the application of the oyster-ground committee of any town in said county, shall appoint a committee of three disinterested persons, not residents of

provided a report to the court designating substantially the entire Clinton harbor as a natural bed. Several persons who previously had acquired oyster grounds and who claimed to be affected by the committee's report appeared and objected to the court's acceptance of the report. The court subsequently rejected the report and referred the case to another committee. The applicants, the Clinton oyster ground committee, immediately appealed from the court's decision. Our Supreme Court heard the appeal, stating that "[i]n ordinary cases the

the town within the boundaries of which any natural oyster, clam, or mussel beds exist, to ascertain, locate, and describe, by proper boundaries, all the natural oyster, clam, or mussel beds within the boundaries of such town. Said committee so appointed shall first give three weeks' notice, by advertising in a newspaper published in or nearest to said town, of the time and place of their first meeting for such purpose; they shall hear parties who appear before them, and may take evidence from such other sources as they may in their discretion deem proper, and they shall make written designations by ranges, bounds, and areas of all the natural oyster, clam, and mussel beds within the boundaries of the town they are appointed for, and shall make a report of their doings to the Superior Court, which report, when made to and accepted by said court, and recorded in the records thereof, shall be a final and conclusive determination of the extent, boundaries, and location of such natural beds at the date of such report. It shall be the duty of the clerk of the court to transmit to the town clerk of each of said towns a certified copy of said report so accepted and recorded in relation to the beds of such town, which shall be recorded by said town clerk in the book kept by him for the record of applications, designations, and conveyance of designated grounds. Such public notice of said application to the Superior Court, and of the time and place of the return of the same, shall be given by said selectmen or oyster-ground committee as any judge of the Superior Court may order. It shall be the duty of the selectmen of the town of Orange, and of the oyster committees of other towns, upon written request, signed by twenty electors of their respective towns, to make such application to the Superior Court within thirty days after receiving a copy of such written request, and said applications shall be privileged, and shall be heard and disposed of at the term of said court to which such application is returned in preference to other causes. All expenses properly incurred by such selectmen and oyster-ground committees in said applications, and the doings thereunder, and the fees of said committees so appointed by court, shall be taxed by the clerk of said court and paid upon his order by the State. . . . Any designation of ground for the planting or cultivation of shell-fish within the areas so established by such report of said committee shall be void."

rejection of the report of a committee is not a final judgment from which an appeal lies. This case however is exceptional. No judgment is to be rendered on the report. When accepted, the report itself becomes practically the final judgment. If rejected, there is no judgment, such as the proceedings contemplate, and the case goes to another committee. The judgment of the court on the remonstrance refusing to accept the report, is in the nature of a final judgment. It deprives the party of a report to which he may be entitled. If he is, it is better for all concerned that it should be determined before the expense is incurred of a trial before another committee. In that aspect of the case, and considering the peculiar character of the proceeding, it was deemed best to hear it on its merits . . . ." Id., 6–7.

The plaintiffs' reliance on *In re Application of Clinton Oyster Ground Committee* is misplaced. The decision of the court that it "was deemed best to hear it on its merits"; id., 7; appears to have been driven by the exigent circumstances surrounding the economic and political considerations that underlie the court's scathing characterization of the committee's actions as "irresponsible" and influenced "by local jealousies and prejudices" in its impassioned discussion of the merits of the case. Id., 7–10. The determination that there was a final judgment in *In re Application of Clinton Oyster Ground Committee* should, therefore, be limited to its unique facts, which the court itself referred to as exceptional, and should not be precedent for a final judgment analysis in cases involving the modern attorney trial referee process. Rather than fitting into the exception created to reach the merits in *In re Application of Clinton Oyster Ground Committee*, this case is more analogous to *Cothren* v. *Atwood*, 63 Conn. 576, 29 A. 13 (1894). In *Cothren*, an appeal was taken from an order sustaining a remonstrance and rejecting the report of a committee in an action on a debt. Our

Supreme Court removed the appeal from the docket after finding that the order was not an appealable judgment. Unlike *In re Application of Clinton Oyster Ground Committee*, which was not a case involving parties to an adversarial proceeding, the court in *Cothren* required the parties to await a final judgment before appealing. *Cothren* v. *Atwood*, supra, 576. Similarly, the plaintiffs in this case must await the entry of judgment, which is an inevitable part of the attorney trial referee process.

In *OCI Mortgage Corp.* v. *Marchese*, 48 Conn. App. 750, 754, 712 A.2d 449 (1998), another appeal involving the attorney trial referee process, we also distinguished our Supreme Court's holding in *In re Application of Clinton Oyster Ground Committee*. In *Marchese*, the defendant property owners in a foreclosure action appealed from the court's order sustaining the plaintiff's objection to the acceptance of the attorney trial referee's report. Id., 750. The court, in sustaining the plaintiff's objection, remanded the case to the same attorney trial referee to " 'proceed in a manner not inconsistent with' " the trial court's decision. Id., 752. The plaintiff filed a motion to dismiss the appeal on the ground that the court's order was not a final judgment. Id., 751–52. In granting the motion to dismiss, we distinguished *In re Application of Clinton Oyster Ground* Committee, explaining that "[a] party cannot appeal from a trial court's order sustaining an objection to an attorney trial referee's report, but rather must appeal from the *judgment* that is rendered thereon. . . . Here, the trial court has not yet rendered judgment. It has simply remanded the case to the attorney trial referee for further proceedings. Accordingly, there is no judgment from which the defendants may appeal." (Citations omitted; emphasis in original.) Id., 754. Similarly, in the present case, by revoking the reference to the attorney trial referee, the court has not yet rendered any judg-

ment under Practice Book § 19-17. As the attorney trial referee process is now terminated, no judgment will be rendered in the matter until after the case goes to judgment in the trial court.

The court's order revoking the reference to the referee also fails to meet the requirements set forth in *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), in which our Supreme Court promulgated a test to determine whether certain otherwise interlocutory orders may constitute final judgments for purposes of appeal. In *Curcio*, the court stated that "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. The first prong of *Curcio* "requires the order being appealed to be severable from the central cause to which it is related so that the main action can proceed independent of the ancillary proceeding." (Internal quotation marks omitted.) *State* v. *Garcia*, 233 Conn. 44, 65, 658 A.2d 947 (1995), on appeal after remand, 235 Conn. 671, 669 A.2d 573 (1996). Applied to the present case, the first prong is inapplicable because the attorney trial referee process is a fact-finding extension of the arm of the court that is not severable from the main proceeding. See *OCI Mortgage Corp.* v. *Marchese*, supra, 48 Conn. App. 754–55.

The court's order also fails to meet the requirements of the second prong of *Curcio*. The focus in that part of the inquiry is "not on the proceeding involved, but on the potential harm to the appellant's rights." *State* v. *Curcio*, supra, 191 Conn. 33. "It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [party] irreparably harmed unless they may

immediately appeal." (Internal quotation marks omitted.) *Shay* v. *Rossi*, 253 Conn. 134, 165, 749 A.2d 1147 (2000). Although parties to a case that qualifies for the attorney trial referee process may withhold consent to the referral of the matter, they do not have a presently existing right to the process. If the parties consent, the court has discretion as to whether to refer the case to a referee. Practice Book § 19-2A. If the court refers the matter, the parties similarly have no right to the acceptance of any referee report that is produced. Pursuant to Practice Book § 19-17, if the court determines that the referee has materially erred in his or her rulings or that there are sufficient reasons for rejecting the report, the court has discretion to revoke the reference to the referee entirely and to leave the disposition of the case with the court. *National Elevator Industry Pension, Welfare & Educational Funds* v. *Scrivani*, 229 Conn. 817, 821–22, 644 A.2d 327 (1994). Even if we were to have found that the plaintiffs had a presently existing right to a report, it would not be irreparably lost by compelling them to await the outcome of the trial by the court, as any erroneous ruling on the revocation of the reference may be redressed on appeal after judgment is rendered. *State* v. *Parker*, 194 Conn. 650, 656, 485 A.2d 139 (1984); see also *Schiappa* v. *Ferrero*, 61 Conn. App. 876, 767 A.2d 785 (2001). As a result, there is no presently existing right of any party that has been concluded as a result of the court's revoking the reference to the attorney trial referee.

Accordingly, we conclude that there is no final judgment in this case. As a result, we lack jurisdiction over this appeal.

The defendant's motion to dismiss the appeal is granted.

In this opinion the other judges concurred.